SAUK COUNTY, Petitioner-Respondent,†

v.

WISCONSIN EMPLOYMENT RELATIONS COM-
MISSION, Co-Appellant,

AFSCME, LOCAL UNION NO. 3148, AFL–CIO,
Complainant-Appellant.

Court of Appeals

*No. 89–2059. Submitted on briefs May 24, 1990.—Decided
August 9, 1990.*

(Also reported in 461 N.W.2d 788.)

† Petition to review granted.

For the complainant-appellant the cause was submitted on the briefs of *Richard V. Graylow* of *Lawton & Cates, S.C.,* of Madison.

For the co-appellant the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *David C. Rice,* assistant attorney general.

For the petitioner-respondent the cause was submitted on the brief of *Robert H. Hesslink, Jr.* of *Hesslink Law Offices, S.C.* of Madison.

Before Eich, C.J., Dykman and Sundby, JJ.

EICH, C.J.   AFSCME, Local Union No. 3148, AFL–CIO and the Wisconsin Employment Relations Commission appeal from an order reversing a commission decision. The issue is whether the commission properly concluded that Sauk County refused to implement an arbitration award under the Municipal Employment Relations Act, sec. 111.70(3)(a)7, Stats.,[1] when it refused to deduct fair share fees[2] and union dues retroactively after a contract hiatus. We agree with the commission's conclusion and reverse the order.

---

[1] Section 111.70(3)(a)7, Stats., provides that it is a prohibited practice for Sauk County to "refuse or otherwise fail to implement an arbitration decision lawfully made . . .."

[2] " 'Fair share agreement' means an agreement between a municipal employer and a labor organization under which . . . employes in the collective bargaining unit are required to pay their proportionate share of the cost of the collective bargaining process and contract administration measured by the amount of dues uniformly required of all members." Sec 111.70(1)(f), Stats.

The facts are not in dispute. Sauk County and the union had a collective bargaining agreement for 1983–84 which required the county to deduct union dues from the paychecks of all employees electing such a deduction and to deduct equivalent "fair-share" amounts from all other employees. The contract expired at the end of 1984, before agreement was reached on a replacement contract for 1985. When the 1983–84 agreement expired, the county discontinued deducting fair share fees and union dues from employee paychecks.

The commission certified that the parties had reached a bargaining impasse with respect to the 1985 agreement and the dispute was submitted to an arbitrator. In October, 1985, the arbitrator adopted the union's final offer which (with certain exceptions not material here) included all provisions of the 1983–84 labor agreement. The agreement embodied in the union's offer and accepted by the arbitrator was for the period January 1, 1985, to December 31, 1985.

The union then requested the county to make fair share fees and union dues deductions retroactive to January 1, 1985. When the county refused to do so, the union filed a prohibited practices complaint under sec. 111.70(3)(a)7, Stats., alleging that the county had refused to implement the arbitration award. As indicated, the commission held that the county had unlawfully refused to implement the award and the trial court reversed.

■

The commission, citing *Milwaukee v. WERC*, 71 Wis. 2d 709, 716, 239 N.W.2d 63, 67 (1976), argues that its interpretation of sec. 111.70, Stats., should be affirmed if it is reasonable and consistent with the purposes of the Municipal Employment Relations Act. In a recent case, however, the Wisconsin Supreme Court

39

rejected the use of the "sustain-if-reasonable" standard in the absence of evidence that the agency's interpretation or application of a particular law "is long continued, substantially uniform and without challenge by governmental authorities and courts." *Local No. 695 v. LIRC,* 154 Wis. 2d 75, 83, 452 N.W.2d 368, 372 (1990), quoting *Beloit Education Ass'n v. WERC,* 73 Wis. 2d 43, 67–68, 242 N.W.2d 231, 242–43 (1976). The court, emphasizing the " 'black-letter rule . . . that a court is not bound by an agency's conclusions of law,' " stated that where there is no evidence that the agency has had experience in interpreting the applicable law "as measured against" the facts of the case—where "there is no evidence of any special expertise or experience" in the particular area—"the weight to be afforded an agency's interpretation is no weight at all." *Local No. 695* at 82–84, 452 N.W.2d at 371–72 (citation omitted).

■ The union contends that the "rational basis test" is nonetheless appropriate in this case because of the commission's experience in interpreting the Municipal Employment Relations Act and its "substantial expertise in the interpretation of collective bargaining agreements and fair share issues . . .." Neither the union nor the commission argue, however, that the commission has particular expertise or a position of long-standing on the precise issue: whether it is a violation of sec. 111.70(3)(a)7, Stats., to refuse to retroactively deduct fair share fees and union dues. Moreover, the commission itself noted in its decision that "[t]he question of whether a violation of a provision [of the collective bargaining agreement] not in issue in the interest arbitration can be a basis of a finding of a violation of [s]ec. 111.70(3)(a)7, Stats., is one that has not been addressed before . . . by the Commission." Under these circum-

stances, *Local 695* requires that we review the commission's decision *de novo.*

The union and the commission argue that the collective bargaining agreement adopted by the arbitrator for 1985 required the county to deduct fair share fees and union dues retroactively. They refer us to the portion of the arbitrator's decision incorporating the union's final offer and to language in that offer stating that "[a]ll provisions of the Labor Agreement of 1983–84" were to continue in effect—including the provision requiring the county to deduct fair share fees and union dues "once each month."

Given the provisions of the arbitrator's award and the terms of the 1985 agreement specifying that the adopted contract "shall be effective as of the first day of January, 1985, and shall remain in full force and effect through the 31st day of December, 1985," we conclude that the county was plainly required to deduct fair share fees and union dues for all of 1985—that is, for each month of the year. And where, as here, it did not do so, the commission could properly order it to make retroactive deductions for any months missed.[3]

Relying on *Cutler-Hammer, Inc. v. Industrial Comm.*, 13 Wis. 2d 618, 109 N.W.2d 468 (1961), the county asserts that retroactive deductions are contrary to the parties' "past practices." It claims that it "has never made fair share deductions either retroactively or during a contract hiatus for at least five years," and that the union acquiesced in that practice.

---

[3]The supreme court has "recognized that retroactivity is a way of life in labor negotiations" and that retroactive application of fair share agreements in particular is not improper. *Berns v. Wis. Employment Relations Comm.*, 99 Wis. 2d 252, 266–67, 299 N.W.2d 248, 256 (1980).

In *Cutler-Hammer*, the court stated that "[w]hen the language of a contract is not clear and unambiguous the practical construction given to it by the acts of the parties is . . . 'entitled to great weight.' " *Id.* at 632, 109 N.W.2d at 475 (citation omitted). Under such circumstances, the court concluded that "[n]either the commission nor [the] court should substitute its own construction of the contract provisions for that which the parties through practical interpretation have placed thereon." *Id.* at 634, 109 N.W.2d at 475.

In this case, we have determined that the collective bargaining agreement provisions and the arbitrator's award are plain and unambiguous in their requirement that the county make monthly fee and dues deductions during calendar year 1985. As a result, the parties' past practices are immaterial. Even if we were to consider the county's failure to implement retroactive deductions in the preceding five years, we do not believe it has established that that "practice" was "acquiesce[d]" in by the union.

After the parties' 1982 collective bargaining agreement expired, and before an agreement for 1983–84 had been reached, the county discontinued deducting fair share fees and union dues. The union filed a prohibited practice complaint with the commission; and while it later withdrew the complaint because it feared that deduction of all past fees and dues in one lump sum would pose a hardship for the employees, it specifically stated at the time that its action was not to be considered an "admission that the county's failure to deduct dues following certification of impasse was lawful." Thus the union has not "consistently acquiesced" in the county's refusal to deduct the fees and dues retroactively.

■

The county also argues that because the union's final offer stated that wages should be paid retroactively, the rule of *inclusio unius est exclusio alterius* should be applied to prohibit the fair share provision from being similarly applied. This is so, according to the county, because the specific mention of a matter in a contract is "considered to exclude other matters of the same nature or class not expressly mentioned . . .." *Goebel v. First Fed. Savings & Loan Ass'n,* 83 Wis. 2d 668, 673, 266 N.W.2d 352, 355 (1978). We have noted in the past that the "exclusio" rule is not a mandatory rule of statutory construction,[4] and we decline to apply it in a contract case such as this where the parties' 1985 agreement and the arbitrator's award, read together, plainly require the county to deduct fair share fees and union dues for each month of 1985.

Finally, the county argues that where, as here, the contract provides for arbitration, all disputes "involving . . . substantive interpretation of th[e] contract" must be submitted to the arbitrator. As a result, the county maintains that the commission erred when it considered the merits of the union's complaint, rather than dismissing it outright. We are not persuaded.

■

We agree with the commission that sec. 111.70(3)(a)7, Stats., authorizes the commission to adjudicate a prohibited practice complaint alleging that a municipal employer has "refuse[d] or otherwise fail[ed] to implement an arbitration decision lawfully made." We agree, too, that sec. 111.70(3)(a)7 was not intended to provide an additional or alternative forum to arbitration

---

[4]*See Manly v. State Farm Fire & Cas. Co.,* 139 Wis. 2d 249, 254, 407 N.W.2d 306, 307 (Ct. App. 1987).

for all disputes concerning a collective bargaining agreement which results from an arbitration award.

Here, however, the 1985 collective bargaining agreement resulted from a mediation-arbitration award, and where the effect of the award was to mandate retroactive dues/fees deduction, we believe disputes regarding retroactive implementation of that award are properly adjudicated in prohibited practice proceedings under sec. 111.70(3)(a)7, Stats.

*By the Court.*—Order reversed.

SUNDBY, J. *(dissenting).* This appeal presents an important issue under the mediation-arbitration provisions of the Municipal Employment Relations Act: Under sec. 111.70(3)(a)7, Stats., may the Wisconsin Employment Relations Commission find a municipal employer guilty of a prohibited practice for failing to implement a provision of a collective bargaining agreement which was not a disputed issue in mediation-arbitration?[1] Because I conclude that it may not, I respectfully dissent.

---

[1] The union petitioned for mediation-arbitration December 13, 1984, to resolve disputed issues as to a successor collective bargaining agreement. The arbitrator issued his award October 15, 1985. 1985 Wis. Act 318, sec. 4, amended the mediation-arbitration procedures set forth in sec. 111.70(4)(cm)6, effective May 7, 1986. A prohibited practice complaint filed under sec. 111.70(3)(a)7 for failure of a municipal employer to implement a collective bargaining agreement under the "interest arbitration" procedure contained in sec. 111.70(4)(cm)6, as amended, would present the same issue as is presented by this case. There is no substantive difference between mediation-arbitration prior to May 7, 1986 and interest arbitration thereafter.

The legislature substituted binding mediation-arbitration for the right to strike in municipal employment.[2] Ch. 178, Laws of 1977. Briefly, the procedure includes open meetings between the parties to present initial bargaining proposals, mediation, possible grievance arbitration, and interest arbitration.

Interest arbitration may be initiated by petition of either or both parties to WERC.[3] Section 111.70(4)(cm)6, Stats. (1983–84), provides: "If a dispute has not been settled after a reasonable period of negotiation and after mediation . . . and the parties are deadlocked with respect *to any dispute between them over wages, hours and conditions of employment to be included in a new collective bargaining agreement,"* a petition may be filed. (Emphasis added.) To determine whether an impasse exists, WERC makes an investigation. Subdivision 6.a provides in part that, "Prior to the close of the investigation each party shall submit in writing its single final offer containing its final proposals *on all issues in dispute* to the commission." Sec. 111.70(4)(cm)6.a, Stats. (1983–84) (emphasis added). The final offers are public documents. *Id.* If WERC concludes that an impasse exists, arbitration is initiated. Subdivision 6.b provides in part that, "The final offers of the parties . . . shall serve as the initial basis for mediation and continued negotiations between the parties *with respect to the issues in dispute."* (Emphasis added.) "The mediator-arbitrator acting as arbitrator shall adopt without further modification the final offer of one of the

---

[2]The labor organization has a right to strike if both parties withdraw their final offers and agreed-upon modifications. Sec. 111.70(4)(cm)6.c, Stats.,

[3]The title to sec. 111.70(4)(cm)6, Stats. (1983–84), was "Mediation-arbitration." 1985 Wis. Act 318, sec. 4, more correctly titled the procedure "Interest arbitration."

parties *on all disputed issues submitted under subd. 6.a
. . ..*" Sec. 111.70(4)(cm)6.d, Stats. (1983–84) (emphasis
added).

WERC acknowledges that in this case, retroactivity
of the fair-share/voluntary dues deduction provision in
the existing collective bargaining agreement was not an
issue in dispute in mediation-arbitration. Nonetheless,
the union filed a prohibited practice complaint against
the employer under sec. 111.70(3)(a)7, Stats., for failing
to make fair-share and union dues deductions retroactive
to the beginning of the contract year.

Section 111.70(3)(a), Stats., provides: "It is a pro-
hibited practice for a municipal employer . . . 7. To
refuse or otherwise fail to implement an arbitration deci-
sion lawfully made under sub. (4)(cm)."

The meaning of a statute is a question of law which
we decide independently of the trial court's conclusion or
the agency's determination. *La Crosse Footwear, Inc. v.
LIRC,* 147 Wis. 2d 419, 422, 434 N.W.2d 392, 393 (Ct.
App. 1988).

The primary source of construction of a statute is
the language of the statute itself. *Ford Motor Co. v.
Lyons,* 137 Wis. 2d 397, 419, 405 N.W.2d 354, 363 (Ct.
App. 1987). Section 111.70(3)(a)7, Stats., was enacted at
the same time as sec. 111.70(4)(cm). Ch. 178, Laws of
1977. Where statutes of direct and immediate linkage are
enacted in the same legislation, they must be considered
*in pari materia* and harmonized if possible. *State v.
DILHR,* 101 Wis. 2d 396, 403, 304 N.W.2d 758, 762
(1981).

I begin my effort to harmonize the statutes by con-
sidering what is *not* a prohibited practice under sec.
111.70(3)(a)7, Stats. It is not a prohibited practice under
sec. 111.70(3)(a)7 for a municipal employer to refuse or
fail to implement a collective bargaining agreement.

That conduct may be a prohibited practice under another provision of sec. 111.70(3)(a), but it is clear it is not reached by subd. 7.[4] What is prohibited by subd. 7 is the employer's refusal or failure to implement "an *arbitration decision* lawfully made under sub. (4)(cm)." (Emphasis added.) The arbitrator's decision "shall be incorporated into a written collective bargaining agreement." Sec. 111.70(4)(cm)6.d, Stats. Where there is an existing collective bargaining agreement, the arbitrator's decision on the disputed issues is incorporated into the collective bargaining agreement. But the arbitrator does not make a decision on the provisions of the existing agreement which, *pro forma,* become part of the new agreement. I do not find the language of sec. 111.70(3)(a)7 ambiguous; it clearly applies to the arbitrator's decision *on the disputed issues* between the parties, and not to the collective bargaining agreement in which the arbitrator's decision on those issues is incorporated.

If sec. 111.70(3)(a)7, Stats., is extended beyond the arbitrator's decision, important disputed issues may be hidden from public scrutiny. The opportunity for public participation in the mediation-arbitration (interest arbitration) process is firmly established state policy.

Section 111.70(4)(cm)2, Stats., provides in part: "The meetings between parties to a collective bargaining agreement or proposed collective bargaining agreement under this subchapter which are held for the purpose of presenting initial bargaining proposals, along with supporting rationale, *shall be open to the public.*" (Emphasis added.) Section 111.70(4)(cm)6.b requires a public hearing upon petition of citizens, at which members of

---

[4] WERC found that the employer was guilty of a derivative violation of sec. 111.70(3)(a)1, Stats. The commission made clear, however, that that violation depended on finding that the employer violated sec. 111.70(3)(a)7.

the public may comment on and make suggestions as to the parties' proposals.[5] "Before issuing his or her arbitration decision, the . . . arbitrator shall . . . conduct a meeting *open to the public* for the purpose of providing the opportunity to both parties to explain or present supporting arguments for their . . . offer[s] . . .." Sec. 111.70(4)(cm)6.d, Stats. (emphasis added).

The purpose of public participation in the collective bargaining process is to encourage reasonable and responsible collective bargaining. Also, the public meeting and hearing requirements give the public an opportunity for input and to be informed, particularly as to economic items which may impact the delivery and cost of municipal services. These salutary purposes are subverted if a disputed issue is not subjected to the mediation-arbitration (interest arbitration) process.

Retroactivity was disputed between the parties. It was simply not subjected to the mediation-arbitration process. The bargaining history reveals that the employer has consistently refused to deduct fair-share contributions and union dues when a contract was not in effect, and has refused to make retroactive deductions when agreement was reached during the contract year. The bargaining history also reveals, however, that the union has never acceded to the employer's practice. In fact, on March 5, 1985, the union filed a prohibited practice complaint alleging that the employer, by ceasing to deduct dues and fair-share contributions, had violated sections 111.70(3)(a)1, 2, 3, and 4, Stats.

Shortly after the union filed its petition for mediation-arbitration, the employer's negotiating committee informed the union, by letter of January 14, 1985, that the employer would discontinue all deductions for union

---

[5]Section 111.70(4)(cm)6.b, Stats., as amended, substitutes a hearing for mediation-arbitration sessions.

dues or fair-share contributions with regard to any bargaining unit not covered by a valid collective bargaining agreement. Thus, the union had fair notice that the employer would follow its previous practice of not making retroactive fair-share and dues deductions. The union elected not to expose that issue to public scrutiny under the mediation-arbitration process. It subverts that process to now allow the union to claim (as it must) that the issue was disputed and was the subject of the arbitrator's decision.[6] This is contrary to the union's position as stated to the arbitrator: "The Union argues that the two issues of primary significance are wages and health insurance payments. It contends that *all other issues in dispute have less importance or no significance.*" (Emphasis added.)

If the union claims that retroactivity was not a disputed issue between the parties, the union is no better

---

[6] If WERC's decision is to have any legitimate claim to logic, WERC must also claim that retroactivity of fair-share and dues deduction was a disputed issue. However, WERC fails to point to anywhere in the process where retroactivity was negotiated, mediated or arbitrated. WERC's only basis for applying the durational clause to the fair-share and dues provision of the contract is one sentence from the union's final offer as follows: "All provisions of the Labor Agreement of 1983–84 except as modified above." The union's final offer was submitted in the handwriting of its negotiator. The arbitrator noted:

> The Arbitrator is of the opinion that the written final offer submitted by the Union to the Commission's investigator was prepared in a rather casual manner. A final offer may determine the wages, hours and conditions of employment for a substantial period of time and every effort should be made to prepare it in a manner that is definite and certain.

I accept that the union by its "casual" offer did not intend to sandbag the employer or the arbitrator. It simply had no intention of making retroactivity an issue in mediation-arbitration.

off. The issue would not then have been subject to the arbitrator's decision and a prohibited practice complaint against the employer would not lie under sec. 111.70(3)(a)7, Stats.

My conclusion does not leave the employees and their representative without recourse. Under the grievance procedure provided in the contract, the union could grieve the employer's refusal to make the fair-share and union dues deductions. Denying the union access to a prohibited practice complaint under sec. 111.70(3)(a)7, preserves the mediation-arbitration (interest arbitration) procedure for issues which are, in fact, disputed. Most important, it preserves the public's opportunity to hear the rationale of the employer and the employee's representative as to each of their positions. We must accept the legislature's judgment that this is a valuable right.