SAUK COUNTY, Petitioner-Respondent-Petitioner,

v.

WISCONSIN EMPLOYMENT RELATIONS COM-
MISSION, Co-Appellant,

AFSCME, Local Union No. 3148, AFL–CIO, Complai-
nant-Appellant.

Supreme Court

*No. 89–2059. Oral Argument September 4, 1991.—Decided
December 9, 1991.*

(Also reported in 477 N.W.2d 267.)

For the petitioner-respondent-petitioner there were briefs filed by *Robert M. Hesslink, Jr.* and *Hesslink Law Offices, S.C.,* Madison and oral argument by *Mr. Hesslink.*

For the complainant-appellant there was a brief by *Richard V. Graylow* and *Lawton & Cates, S.C.,* Madison and oral argument by *Mr. Graylow.*

For the co-appellant there was oral argument by David Rice, assistant attorney general.

Amicus curiae brief was filed by *Marianne G. Robbins, Naomi E. Eisman* and *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman,* Milwaukee for Wisconsin State AFL–CIO.

Amicus curiae brief was filed by *Richard Thal* and *Cullen, Weston, Pines & Bach,* Madison for Wisconsin Professional Police Association/Law Enforcement Employee Relations Division.

Amicus curiae brief was filed by *Bruce Meredith,* Madison for Wisconsin Education Association Council.

Amicus curiae brief was filed by *Timothy E. Hawks, Linda Schmidt Quartaro* and *Shneidman, Myers, Dowling & Blumenfield,* Milwaukee for Wisconsin Federation of Teachers.

Amicus curiae brief was filed by *Bruce F. Ehlke* and *Lawton & Cates,* Madison for Wisconsin State Employees Union and Professional Firefighters of Wisconsin.

LOUIS J. CECI, J.   This case is before the court on petition for review of a decision of the court of appeals, *Sauk County v. WERC,* 158 Wis. 2d 35, 461 N.W.2d 788 (Ct. App. 1990). The majority of the court of appeals (Sundby, J., dissenting) reversed the order entered by the circuit court for Sauk county, Howard W. Latton, Reserve Circuit Judge. The circuit court's order reversed a Wisconsin Employment Relations Commis-

sion (WERC) decision which found that Sauk County (the county) had violated sec. 111.70(3)(a)7, Stats.,[1] by refusing to retroactively deduct fair-share fees and union dues to cover the period of time between the expiration of one employment contract and the ratification of a successor contract.

Three issues are presented on review. The first issue is whether an "arbitration decision," as that phrase is used in sec. 111.70(3)(a)7, Stats., encompasses all items that are incorporated into a resultant written collective bargaining agreement, even those not in dispute before the arbitrator. We hold that it does.

The second issue is whether fair-share fees and union dues are economic items that should be given retroactive effect. We hold that they are.

The third issue is whether the county's refusal to retroactively deduct fair-share fees and union dues in this case amounts to a failure to implement an arbitration decision, in violation of sec. 111.70(3)(a)7, Stats. We hold that it does. We therefore affirm the decision of the court of appeals.

The facts of this case are not in dispute. AFSCME, Local Union No. 3148, AFL–CIO (the union), is certified as the exclusive bargaining representative of all employees at Sauk County Health Care Center. The union and the county were parties to a labor contract covering calendar years 1983–84. Prior to the expiration of the

[1]Section 111.70(3)(a)7, Stats., provides:

**111.70 Municipal employment . . ..**

. . .

**(3) Prohibited practices and their prevention.** (a) It is a prohibited practice for a municipal employer individually or in concert with others:

. . .

7. To refuse or otherwise fail to implement an arbitration decision lawfully made under sub. (4)(cm).

1983–84 contract, negotiations began for an agreement to cover 1985. During negotiations, neither party proposed any changes to the 1983–84 contract provision which required fair-share fees and union dues to be deducted once each month from paychecks. The county ceased deducting fair-share fees and union dues from paychecks when the 1983–84 contract expired.

The parties entered into interest arbitration pursuant to sec. 111.70(4)(cm)6, Stats., after negotiations stalled. Each party submitted its final offer to the arbitrator. The arbitrator issued his decision in October, 1985. He chose the union's final offer, which contained the following clause: "IX. All provisions of the Labor Agreement of 1983–84 except as modified above." The union's offer also indicated that its wage proposal was to be retroactive to January 1, 1985. Neither party's offer contained any specific language regarding the retroactivity of the fair-share fees and union dues. The arbitrator's decision directed that "the Union's final offer . . . be incorporated into an agreement containing the other items to which the parties have agreed."

The resultant 1985 contract contained a fair-share provision which was identical to the fair-share provision in the 1983–84 contract. The provision required that fair-share fees and union dues be deducted "once each month." The 1985 contract's duration clause stated that the contract "shall be effective as of the first day of January, 1985, and shall remain in full force and effect throughout the 31st day of December, 1985 . . . .." The 1985 contract also contained a grievance arbitration procedure whereby the parties agreed to submit to arbitration "any dispute concerning the interpretation or application of a provision of this contract . . . .."

After the county refused to retroactively deduct fair-share fees and union dues for the period of time between

the expiration of the 1983–84 contract and the ratification of the 1985 contract, the union filed a prohibited practice complaint with the WERC. The complaint alleged violations of secs. 111.70(3)(a)1–4 and 7, Stats. The WERC hearing examiner determined that the county had violated sec. 111.70(3)(a)7, Stats., by refusing to retroactively deduct fair-share fees and union dues.

The hearing examiner decided that even though fair-share fees and union dues were not in dispute before the arbitrator, the arbitration decision nonetheless included those items. The examiner also determined that a fair-share/voluntary dues provision is most likely to be considered an economic item capable of being applied retroactively and should have been retroactively applied here. After noting that the issues posed by this case had not been "addressed before this by the Commission," the examiner decided that a sec. 111.70(3)(a)7 violation could be found where "the alleged violation arises in the context of implementing the new agreement pursuant to the award, as opposed to after the implementation of the award, and the issue goes to whether a provision of the agreement is to be given retroactive effect under the award . . .." The examiner concluded that the county's refusal to retroactively deduct the fair-share fees and union dues amounted to a failure to implement the arbitration decision and therefore was a violation of sec. 111.70(3)(a)7, Stats.

The WERC issued an order confirming the examiner's decision, and the county then instituted proceedings in Sauk county circuit court for review of that order. The circuit court determined that the county had not violated sec. 111.70(3)(a)7 and reversed the commission's order. The court of appeals reversed the circuit court and found that the county had violated sec.

111.70(3)(a)7. We granted the county's petition for review and affirm the court of appeals.

■

The issues presented by this case are questions of law. When reviewing questions of law, we are not bound by an administrative agency's conclusions. *Local No. 695 v. LIRC,* 154 Wis. 2d 75, 82, 452 N.W.2d 368 (1990). This court has in the past generally applied three levels of deference to conclusions of law and statutory interpretations in agency decisions. The first and highest amount of deference given to agency interpretations is the "great weight" standard. Under this standard, it is "only when the interpretation by the administrative agency is an irrational one that a reviewing court does not defer to it." *Beloit Education Ass'n v. WERC,* 73 Wis. 2d 43, 67, 242 N.W.2d 231 (1976) (footnote omitted). The "great weight" standard is "the general rule in this state." *Id.* We have described the proper use of the "great weight" standard as follows:

> [I]f the administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute, the agency's conclusions are entitled to deference by the court. Where a legal question is intertwined with factual determinations or with value or policy determinations or where the agency's interpretation and application of the law is of long standing, a court should defer to the agency which has primary responsibility for determination of fact and policy.

*West Bend Education Ass'n v. WERC,* 121 Wis. 2d 1, 12, 357 N.W.2d 534 (1984) (footnote omitted).

The second level of review is a mid-level standard, referred to as either the "due weight" or "great bearing" standard. We use this standard if the agency decision is

"very nearly" one of first impression. *Beloit Education Ass'n,* 73 Wis. 2d at 67–68.

The lowest level standard of review we use in reviewing agency decisions is the "*de novo*" standard, in which no weight at all is given to the agency interpretation. *Local No. 695,* 154 Wis. 2d at 84.

In *Local No. 695,* we reversed a labor and industry review commission determination that dues refunds to union stewards constituted "wages" for purposes of unemployment compensation. In deciding the case, the commission "neither relied on, nor referred to, any precedents or any prior decision in its own proceedings." *Id.* at 81. The case was clearly one of first impression for the commission. It was also clear from the lack of precedent that the commission had no special expertise or experience in determining whether the refunds in question constituted wages. *Id.* at 84. A *de novo* standard of review was therefore necessarily used. *Id.*

■

Against this background, we have determined that this case involves two standards of review. The first issue, whether an arbitration decision encompasses those items not in dispute, and the third issue, whether the county's actions constitute a violation of sec. 111.70(3)(a)7, Stats., are questions of first impression before the WERC. Although we normally accord an agency's interpretation of a statute great weight, we cannot do so here because this is a case of first impression, and there is no precedent for the WERC's decision. Therefore, the standard of review on these two issues must necessarily be *de novo. Local No. 695,* 154 Wis. 2d at 84.

■

The second issue, whether fair-share fees and union dues are economic items which should be given retroac-

tive application, is the type of issue with which the WERC has expertise. As we have stated before, "[R]etroactivity is a way of life in labor negotiations." *Berns v. WERC,* 99 Wis. 2d 252, 266, 299 N.W.2d 248 (1980). The WERC has had significant experience in dealing with the recurring problem of retroactivity and in interpreting contracts in light of parties' past practices. The WERC's retroactive application of fair-share fees and union dues is also a policy decision. We reaffirm that it is proper and consistent with long-standing public policy that those who receive the benefit of union representation pay for their fair share of the costs of that representation. The WERC's determination of which aspects of the contract are economic items given retroactive application is therefore accorded great weight. We will defer to the WERC's conclusion if it is rational. *Beloit Education Ass'n,* 73 Wis. 2d at 67.

The first issue requires us to determine the scope of "arbitration decision," as used in sec. 111.70(3)(a)7, Stats. The county contends that the retroactivity of the fair-share fees and union dues was not part of the arbitration decision because retroactivity was not a disputed item before the arbitrator. The union responds that an arbitration decision, as that term is used in sec. 111.70(3)(a)7, includes all items, whether disputed or stipulated, that are incorporated into a resultant collective bargaining agreement. The WERC found that although retroactivity of fair-share fees and union dues were not disputed issues before the arbitrator, they were included in the resultant arbitration decision. We review this issue *de novo* and grant the WERC's decision no deference. However, we agree with the union and the WERC decision. To hold otherwise would be to disregard the language, legislative history, and purpose of the statute.

There may be some language found in sec. 111.70(4)(cm)6.d, Stats., that appears to support the county's position. That statute states in relevant part that "[t]he arbitrator shall adopt . . . the final offer of one of the parties on all disputed issues . . ., which decision shall be . . . incorporated into a written collective bargaining agreement." However, the previous sentence of that same section requires the arbitrator to consider each party's "complete offer on *all matters* to be covered by the proposed agreement" (emphasis added). This emphasized language supports the union's position.

The legislative council notes which accompanied ch. 178, Wis. Laws of 1978, in which sec. 111.70(3)(a)7, Stats., had its origin, state:

> In making his or her arbitration decision, the 'mediator-arbitrator,' acting as arbitrator, shall adopt the 'entire package' final offer of one of the parties, including any previously agreed to modifications thereof. Such decision shall be final and binding on both parties and shall be incorporated into a written collective bargaining agreement.

Wis. Stat. Ann. sec. 111.70, Legislative Council Notes, sec. III(g) (West 1988). The "entire package final offer" of a party is not just that party's position on the disputed issues; it is that party's position on all issues, whether stipulated or disputed. When the statute is read together with the legislative council notes, we are led to the conclusion that an arbitration decision encompasses all matters, whether disputed or not. This result makes sense, as the statutes direct the arbitrator to give weight to the stipulations of the parties before choosing one party's final offer on the disputed issues. *See* sec. 111.70(4)(cm)7.b, Stats.

416

In addition, the purpose behind arbitration is to produce an entire agreement when the parties themselves are unable to. It is sensible that the arbitrator's decision, which becomes the resultant written collective bargaining agreement, necessarily encompasses all items, including those which are undisputed.

We therefore hold that an arbitration decision, as that term is used in sec. 111.70(3)(a)7, Stats., encompasses all items that are incorporated into a resultant written collective bargaining agreement, even those not in dispute before the arbitrator.

The second issue concerns the retroactive application of fair-share fees and union dues. The WERC found that fair-share fees and union dues were economic items easily capable of retroactive application. We grant the WERC's decision great weight, and, because we find it rational, we affirm the decision.

Labor contracts are often back-dated for the purpose of retroactive application of economic items such as wage increases. Indeed, as we noted above, "retroactivity is a way of life in labor negotiations." *Berns,* 99 Wis. 2d at 266.

A typical economic item in a bargaining agreement is wages, while a typical noneconomic item would be a standard of cause for discharge. We find that fair-share fees and union dues are almost purely economic items similar to wages and are not a condition of employment. The WERC's determination that fair-share fees and union dues are economic items is, therefore, rational, and we defer to it.

In addition, the language of the agreement does not contradict a finding that the fees and dues were to be applied retroactively. The agreement's duration clause

stated that it was to take effect "as of the first day of January, 1985, and shall remain in full force and effect through the 31st day of December, 1985 . . .." The agreement also contained a provision which required the county to deduct fair-share fees and union dues "once each month." This language supports our finding that the WERC's decision was rational.

The county contends that our decision in *Berns,* 99 Wis. 2d 252, requires that the parties bargain for and reach an agreement on retroactivity of fair-share fees before they may be deducted retroactively. We do not agree. The issue in *Berns* was whether or not a fair-share provision in a collective bargaining agreement may be applied retroactively. *Id.* at 254. Nothing in the language of *Berns* mandates that the parties to a fair-share provision specifically bargain for the retroactivity of the provision before it may be applied retroactively.

In fact, our language in *Berns* supports the WERC's finding of retroactivity. In particular, when we addressed the policy behind fair-share fees, we stated:

> The availability of the fair-share device as protection against 'freeloaders' who benefit from the efforts of the bargaining representative but who, being nonunion members, do not pay regular union dues is important in light of the duty imposed by statute upon the certified majority representative to bargain collectively on behalf of all unit members.

*Id.* at 264. We reaffirm this holding and state that this policy applies with equal force today. Because all the members in the bargaining unit here were represented by the union during the entire term of the contract, it is rational to require that all members of the unit pay for the representation during the entire term.

The WERC's decision on the retroactivity of fair-share fees and union dues was rational. Therefore, we defer to it and hold that fair-share fees and union dues are economic items that should be given retroactive effect.

The third issue is whether the county's actions in this case amount to a failure to implement an arbitration decision, in violation of sec. 111.70(3)(a)7, Stats. The WERC held that the county's actions amounted to a refusal to implement an arbitration decision. We review this issue *de novo* and grant no deference to the WERC.

The collective bargaining agreement in this case contained a broad grievance arbitration provision which stated that "any dispute concerning the interpretation or application of . . . this contract . . . shall be handled [by arbitration]." The county argues that this dispute is over the interpretation of the contract and should therefore be before an arbitrator. The county also argues that if we find a refusal to implement an arbitration decision in this case, any dispute involving a violation of any part of an agreement reached through arbitration could be viewed as a failure to implement an arbitration decision. We do not agree.

An obvious situation which could give rise to a charge that an employer has failed to implement an arbitration decision under sec. 111.70(3)(a)7 would be where an employer has refused to incorporate specific items included in an arbitrator's award, such as a wage increase. Where an arbitration decision provides that a contract is to be retroactive, it would also be a failure to implement the decision if an employer refused to give the pay increase retroactively. In like manner, it is a failure to implement an arbitration decision if an employer refuses to retroactively implement economic items which were intended to be retroactive.

The county's failure to implement the arbitration award in this case arose out of its refusal to retroactively implement an economic item in the arbitration decision. The arbitration decision called for the resultant agreement to be retroactive. Although this dispute arose out of a difference in opinion as to the interpretation of the retroactivity of certain terms of a contract, that does not negate the fact that the county's actions literally resulted in a failure to implement the arbitration decision.

We hold that under sec. 111.70(3)(a)7, Stats., failure to implement an arbitration decision arises when an employer (a) fails to incorporate specific terms of an arbitrator's award into a resultant collective bargaining agreement or (b) fails to give retroactive effect to economic items in a retroactive contract. We do not hold that any violation of a term of a collective bargaining agreement will give rise to a sec. 111.70(3)(a)7 violation. Disputes over construction of terms of an arbitration decision or resultant collective bargaining agreement after implementation of the agreement are proper subjects for arbitration. However, if the dispute relates to the retroactive effect of economic items in the arbitration decision and leads to a failure to implement the arbitration decision, the dispute may properly be the subject of a sec. 111.70(3)(a)7 prohibited practice complaint.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* If this court were the appropriate body to decide the issue, I would be persuaded that the fair share provision under the collective bargaining agreement was retroactive. I

dissent because the issue of retroactivity has not been presented to the appropriate decision maker. The county's refusal to give retroactive status to the fair share provision does not, in my opinion, constitute a refusal or failure to implement an arbitration decision under sec. 111.70(3)(a)7, Stats. 1989–90, and therefore the issue was not appropriately before WERC.

I conclude that the dispute is governed by the parties' collective bargaining agreement that provides that "any dispute concerning the interpretation or application of a provision of this contract . . . shall be handled [by arbitration]." The court should remand this case to the circuit court, and the circuit court should direct the parties to submit the issue to grievance arbitration.

## I.

As an initial matter, I must decide what standard of review to apply to WERC's interpretation of sec. 111.70(3)(a)7. The statutes as well as the cases give guidance.

Section 227.57(5), Stats. 1989–90, provides that "the court shall set aside or modify the agency action if it finds that the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action . . .." This provision is silent about the weight or deference, if any, a court should accord the agency's interpretation of a statute. Section 227.57(10) provides, however, that "due weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved, as well as the discretionary authority conferred upon it." According to these provisions of the statutes, the weight that is due an agency's interpretation of the law depends on the comparative institutional capabilities and qualifications of

the court and the administrative agency in deciding the issue.

The cases also provide some guidance, although one commentator observed in 1973 that the Wisconsin Supreme Court defers to agencies in an "inconsistent manner [and] employs different review standards in cases involving similar issues without attempting to resolve the conflict."[1] Some attorneys probably think that the same situation still exists today. Professor Davis also cautions about "the formulas to which courts pay lip service." They are, he writes, "guides that leave a good deal of room for judicial discretion, which varies in response to judicial impressions of acts and circumstances of particular cases."[2]

I find the brief of amicus curiae Wisconsin Education Association Council (WEAC) helpful in stating the following standard of review distilled from our cases. Courts retain the ultimate authority to decide questions of law.[3] Courts defer to administrative agencies in specified situations where they believe the administrative agencies can offer the court guidance on the construction of a particular statute, rule, or policy or where deference advances other important objectives. In considering the weight to accord the agency's decision about a question

---

[1] Paul B. Hewitt, *The Scope of Judicial Review of Administrative Agency Decisions in Wisconsin,* 1973 Wis. L. Rev. 554, 575, quoted in *West Bend Education Ass'n v. WERC,* 121 Wis. 2d 1, 12–13 n.13, 357 N.W.2d 534 (1984).

[2] Kenneth Culp Davis, *1982 Supplement to Administrative Law Treatise* sec. 29.00, at 562–63, quoted in *West Bend Education Ass'n v. WERC,* 121 Wis. 2d 1, 12–13 n.13, 357 N.W.2d 534 (1984). See also Kenneth Culp Davis, 5 *Administrative Law Treatise* ch. 29 (1984 and 1989 Supp.).

[3] *Local No. 695 v. LIRC,* 154 Wis. 2d 75, 82, 452 N.W.2d 368 (1990) (quoting *West Bend Ed. Ass'n,* 121 Wis. 2d at 11).

of law, a court considers such factors as the agency's actual experience with the precise or similar issue or with a given subject matter or area,[4] the need for uniform administration and application of the law, the consistency of the agency's decisions, and the soundness of the agency's legal reasoning and methodology.[5]

The court has explained this comparative institutional approach to the scope of review as follows: "[M]erely labeling the question as a question of law and

[4]The Wisconsin Education Association Council asked the court to clarify the standard of review, expressing concern that *Local No. 695 v. LIRC,* 154 Wis. 2d 75, 452 N.W.2d 368 (1990), was a change in the court's approach to reviewing an agency's decision about a question of law. According to WEAC, in cases prior to *Local No. 695* a factor in determining the weight due an agency's decision about a question of law was the agency's prior experience with the general subject matter at issue, as well as the agency's experience with the precise question or a question similar to that presented to the court. According to WEAC, LIRC had considerable experience in the general subject matter of defining "wages" for the purpose of the unemployment compensation system but was accorded no deference in *Local No. 695.* As a result, WEAC and others read *Local No. 695* to suggest that the agency must have considerable experience in the precise question presented, rather than in the general subject matter at issue, for its decision to be granted any weight.

In interpreting *Local No. 695,* the majority opinion unfortunately appears to confirm WEAC's view that *Local No. 695* has ushered in a new rule. The majority opinion looks only to LIRC's experience in "determining whether the refunds in question constituted wages" and not to its experience in determining the meaning of wages under unemployment compensation law in numerous other fact situations. Majority op. at 414.

[5]*See, e.g., West Bend Education Ass'n v. WERC,* 121 Wis. 2d 1, 12, 357 N.W.2d 534 (1984); *Nottelson v. ILHR Department,* 94 Wis. 2d 106, 117, 287 N.W.2d 763 (1980); *Berns v. WERC,* 99 Wis. 2d 252, 261–62, 299 N.W.2d 248 (1980).

labeling the commission's determination as a conclusion of law does not mean that the court should disregard the commission's determination . . .. We have recognized that when the expertise of the administrative agency is significant to the value judgment (to the determination of a legal question), the agency's decision, although not controlling, should be given weight. *Milwaukee Co. v. ILHR Dept.,* 48 Wis. 2d 392, 399, 180 N.W.2d 513 (1970)." *Nottelson v. ILHR Department,* 94 Wis. 2d 106, 116–117, 287 N.W.2d 763 (1980).[6] If on analysis of the comparative qualifications of the court and the administrative agency the court determines that it should accord great weight to an agency's decision in a particular case, the court will uphold the agency's interpretation of the law when reasonable, even if an alternative view is also reasonable. *Environmental Decade v. ILHR Dept.,* 104 Wis. 2d 640, 644, 312 N.W.2d 749 (1981).

Some of the circumstances of this case point to according WERC's interpretation of sec. 111.70(3)(a)7 great weight. While WERC admits it has not previously ruled on the issue of law in this case, it does administer the Municipal Employee Relations Act and possesses great expertise in working with the statutory scheme. This factor might lead me to give great weight to WERC's interpretation.

Other factors point, however, to giving little if any weight to WERC's interpretation of the statute in this case. First, WERC never decided the merits of this case; it merely adopted the hearing examiner's decision because the county's petition to WERC to review the

---

[6]A similar question of deference arises in the context of appellate review of trial court decisions. *See Oakley v. Fireman's Fund of Wisconsin,* 162 Wis. 2d 821, 825, 470 N.W.2d 882 (1991) (Abrahamson, J., concurring) (urging analysis of the issue under review rather than the use of boilerplate language).

examiner's decision was not timely filed.[7] Thus we do not have before us a decision of WERC interpreting the statute in issue. Second, WERC has not decided cases involving the precise question presented in this case or similar questions; it has not even decided numerous cases interpreting sec. 111.70(3)(a)7.[8] Third, the hearing examiner did not explain the bases for his statutory interpretation, instead focusing primarily on whether the fair share provisions should apply retroactively.[9] I believe that in this case the court is as qualified as or better qualified than the hearing examiner to interpret the statute in issue. Accordingly I conclude that little if any weight should be given to the hearing examiner's decision in this case.

---

[7]Sauk County, WERC Dec. No. 23489-B (1987).

[8]Indeed a WERC regulation could be read as contradicting the hearing examiner's decision in this case. The regulation appears to interpret sec. 111.70(3)(a)7 as referring only to the employer's failing to incorporate the award into a written collective bargaining agreement. *See* Wis. Admin. Code, ERB 32.16 (1986).

[9]The sum total of the hearing examiner's reasoning is as follows: ". . . it is concluded that where, as here, the alleged violation arises in the context of implementing the new agreement pursuant to the award, as opposed to after the implementation of the award, and the issue goes to whether a provision of the agreement is to be given retroactive effect under the award, a (3)(a)7 charge will lie. This is true even if the provision in question was not directly in issue in the interest arbitration." Sauk County, WERC Dec. No. 23489-A, at 18 (1987).

The hearing examiner cites no authority for his interpretation of the term "implement." Sauk County WERC Dec. No. 23489-A, at 18 (1987).

## II.

The question of law presented to the hearing examiner and to this court is whether the county refused or failed to implement an arbitration decision under sec. 111.70(3)(a)7, Stats. To answer this question, we must distinguish between refusing to implement an interest arbitration decision and disputing the meaning of the terms of a collective bargaining agreement.

The county asserts that it has not refused to implement the arbitration award. It acknowledges that the fair share provision must be incorporated into the parties' agreement. It has not refused to withhold fair share dues in any month following the issuance of the award. The county asserts that it is implementing the award but that the parties disagree about the meaning of the terms of the agreement.

It is important to distinguish refusing to implement an interest arbitration decision and disputing the meaning of the terms of a collective bargaining agreement because they have different consequences. An employer who refuses to implement an interest arbitration award violates sec. 111.70(3)(a)7, faces a prohibited practices hearing before WERC, and may be liable for attorneys' fees under sec. 111.70(7m)(e). By contrast, an employer who disputes the meaning of a collective bargaining agreement faces a grievance arbitration proceeding with its own standard of judicial review. Attorneys' fees awards are not ordinarily available in arbitration proceedings.

If the parties had arrived at the collective bargaining agreement through a voluntary settlement rather than through interest arbitration and the same question of the retroactivity of the fair share provision in the collective bargaining agreement had arisen, this dispute

would have likely gone before a grievance arbitrator according to the terms of the collective bargaining agreement. In this case the dispute involves the interpretation of language in the collective bargaining agreement agreed to by both parties prior to the interest arbitration. The dispute does not involve any issue resolved in the arbitrator's decision. The dispute does not involve any language in the arbitrator's decision except the language of the parties which the arbitrator incorporated.

Arbitration is what the parties bargained for when there is a dispute about the meaning of the agreement. The determination of retroactivity turns on the language of the particular agreement and the circumstances of the bargaining. Arbitrators handle retroactivity disputes under the collective bargaining agreement frequently. Why should this dispute be subject to a prohibited practices complaint merely because the parties settled other disputed terms of the collective bargaining agreement through interest arbitration? The majority opinion does not answer this question. The majority turns to defining the word "implement" without examining these policy considerations.

The majority opinion defines the word "implement" in sec. 111.70(3)(a)7 to mean that an employer fails to incorporate specific terms of an arbitrator's award into a resultant collective bargaining agreement. I agree with this definition, but I do not believe that Sauk County has failed to implement the arbitration decision according to this definition.

If this case is to fall within sec. 111.70(3)(a)7, the majority must adopt a broader definition of the word "implement." But the majority cannot give the word "implement" too broad a reading. Unless the majority limits the word "implement" in sec. 111.70(3)(a)7, every dispute involving any part of an agreement reached

through interest arbitration can be viewed as a failure to implement the arbitration decision, and all grievance arbitration may be supplanted by sec. 111.70(3)(a)7 proceedings.

The majority further defines "implement" to mean that an employer "fails to give retroactive effect to economic items in a retroactive contract." Majority op. at 420. Nothing in the language or legislative history of sec. 111.70(3)(a)7 or in the general usage of the word "implement" supports the majority's interpreting the word "implement" as referring only to economic items retroactively applied. Section 111.70(3)(a)7 simply states:

> **(3)** Prohibited practices and their prevention. (a) It is a prohibited practice for a municipal employer individually or in concert with others:
> 7. To refuse or otherwise fail to implement an arbitration decision lawfully made under sub. (4)(cm).

The majority's interpretation of "implement" as being the failure to "give retroactive effect to economic items" permits the court to resolve the substantive issues in this case. The problem is that this interpretation cannot be derived from sec. 111.70(3)(a)7 or sec. 111.70(4)(cm) and permits prohibited practices complaints in more circumstances than the logic of the statutory scheme allows.

Although I believe an arbitrator would reach the same result as the hearing examiner did about retroactivity, I do not think the majority's decision complies with the procedures the legislature established. For the reasons set forth, I dissent.