Chua V. LEE, Petitioner-Appellant,†

v.

BUREAU OF ECONOMIC ASSISTANCE and Office of
Administrative Hearings, Department of Health &
Social Services, State of Wisconsin, Respondents-
Respondents.

Court of Appeals

*No. 94–0250. Oral argument September 20, 1994.—Decided
February 15, 1995.*

(Also reported in 531 N.W.2d 337.)

†Petition to review denied.

227

On behalf of the petitioner-appellant, the cause was submitted on the briefs and oral argument of *Donald A. Idzikowski* of *Legal Services of Northeastern Wisconsin, Inc.*

On behalf of the respondents-respondents, the cause was submitted on the briefs of *James E. Doyle*, attorney general and *Donald P. Johns*, assistant attorney general. Oral argument by *F. Thomas Creeron III*, assistant attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

ANDERSON, P.J. Chua V. Lee appeals from an order of the circuit court affirming a hearing examiner's decision that Lee failed to participate in the Aid to Families with Dependent Children (AFDC) JOBS program. Because we conclude that Lee failed to show good cause for her nonparticipation, we affirm.

Lee received AFDC and was required to participate in the job opportunities and basic skills (JOBS) training program, an AFDC program established for the purpose of assisting AFDC recipients to develop marketable work skills and obtain gainful employment. WISCONSIN ADM. CODE § HSS 201.03(11m). According to the hearing examiner's findings of fact, seventeen jobs were developed in conjunction with the Hmong Mutual Assistance Association (HMAA) at two different companies: Kleentest in Sheboygan and West Bend Corporation in West Bend. According to the examiner, "The jobs were open to all JOBS participants, but were considered especially desirable for Hmong because they would bring the participants into contact with company personnel staff fluent in Hmong, and acquainted with Hmong culture." Lee was asked to attend a meeting at the HMAA to learn more about

these job opportunities and begin the application process. Lee was offered a job on the second shift at West Bend Corporation but refused to accept it.

One of Lee's main reasons for refusing the job was that she did not want to drive at night. The hearing transcript reveals that Lee still refused to accept the job in West Bend after a car pool arrangement was set up: "She will work as best as possible rotating a driving schedule with fellow workers and if needed [a person in the office] is available to be a driver for Chua's car at night to pick Chua up, if she does not have a ride home." It was determined that Lee did not have good cause for refusing the job and a sanction was imposed, removing Lee's needs from the AFDC case and thereby adversely impacting her grant.

Lee petitioned the Department of Health and Social Services (DHSS) to review the issue of whether she had failed to comply with the AFDC JOBS program without good cause. The state hearing examiner dismissed the petition for review, concluding that Lee had failed to show good cause for her nonparticipation. Lee appealed the agency decision to the circuit court. The circuit court held:

> The record supports the examiner's determination that the agreement of HMAA and the JOBS program was developed to assist the petitioner and others of her ethnic background in employment situations. The record also supports the examiner's conclusion that the department did not engage in discriminatory conduct.
>
> At the time of her JOBS Reconciliations . . . petitioner's central objection to employment with West Bend was that she did not want to drive at night. Although transportation arrangements were made available, petitioner continued to refuse to accept the job.

Lee appeals from the circuit court's order.

██

Whether Lee failed to participate in the JOBS program without good cause requires application of undisputed facts to a specific standard. This is a question of law. *"K" Care, Inc. v. Town of Lac du Flambeau*, 181 Wis. 2d 59, 65, 510 N.W.2d 697, 699 (Ct. App. 1993). Additionally, whether the Hmong population was discriminated against within the JOBS program in violation of Title VI of the Civil Rights Act of 1964 and its regulations is also a question of law. This court is not bound by an administrative agency's conclusions when reviewing questions of law. *Sauk County v. WERC*, 165 Wis. 2d 406, 413, 477 N.W.2d 267, 270 (1991). We will defer to an agency's decision if the administrative agency's experience, technical competence and specialized knowledge aid the agency in its interpretation and application of the law. *Id.* This is known as the "great weight" standard and is the general rule in Wisconsin. *Id.* We conclude that the examiner's conclusions are entitled to great weight because regardless of the various issues raised, the agency has developed an expertise in the operation of AFDC programs to which we will defer.

██

At oral argument, the State raised the issue of whether DHSS had subject matter jurisdiction to hear Lee's discrimination claim. We requested supplemental briefs on the issue. We are satisfied that subject matter jurisdiction existed for DHSS to hear Lee's allegation of discrimination. Lee raised her complaint of discrimination within the context of good cause for her nonparticipation in the JOBS program. We conclude that the issue was properly before the agency. We now address the merits of Lee's appeal.

Lee argues that "she and other Hmong participants involved were discriminated against on the basis of national origin in violation of the federal regulations governing public benefit programs." Lee cites the following portions of 45 C.F.R. § 80.3 (1993), which she uses to support her argument:

(b) *Specific discriminatory actions prohibited.*
(1) A recipient under any program to which this part applies may not, directly or through contractual or other arrangements, on ground of race, color, or national origin:

. . ..
(ii) Provide any service, financial aid, or other benefit to an individual which is different, or is provided in a different manner, from that provided to others under the program;
(iii) Subject an individual to segregation or separate treatment in any matter related to his receipt of any service, financial aid, or other benefit under the program;

. . ..
(v) Treat an individual differently from others in determining whether he satisfies any . . . other requirement or condition which individuals must meet in order to be provided any service, financial aid, or other benefit provided under the program;
(vi) Deny an individual an opportunity to participate in the program through the provision of services or otherwise or afford him an opportunity to do so which is different from that afforded others under the program (including the opportunity to participate in the program as an employee but only to the extent set forth in paragraph (c) of this section).

Lee argues that requiring only Hmong participants to attend a meeting at the HMAA and to apply for certain

jobs violated the federal regulations prohibiting discrimination and also had a discriminatory impact.

We disagree that the JOBS program policies violated federal regulations. While the job opportunities at Kleentest and West Bend were reserved for the refugee population based upon an agreement with the HMAA, the positions were open for the general population. Although Lee argues that "[e]ven though these jobs were ostensibly 'open' to all participants, no one in the program other than the Hmong were sanctioned for not applying for, and/or accepting, these positions," she provides no proof. After reviewing Lee's citations to the record as well as making our own independent review, we cannot find evidence to substantiate this contention.

Similarly, we reject Lee's argument of discriminatory impact. Lee has not demonstrated proof of discriminatory impact within the Hmong population. Mere allegations are not enough. *See State v. Gulrud*, 140 Wis. 2d 721, 730, 412 N.W.2d 139, 142-43 (Ct. App. 1987). We save our analysis for a day when a better-developed record is before us.

Additionally, Lee has not demonstrated good cause for her nonparticipation. When Lee said that she would not take the job because of night driving, every effort was made to develop a car pool and even a driver upon occasion. Lee was still unwilling to work at West Bend after the driving arrangement had been set up. We conclude that the hearing examiner correctly determined that Lee's failure to participate in the JOBS program was without good cause. See WIS. ADM. CODE § HSS 201.19(2)(a).

232

Next, Lee argues that she is exempt from participation in the JOBS activity at West Bend because the location of the job was too remote. 45 C.F.R. § 250.30(b)(5) (1993), provides:

> (b) An individual shall be considered exempt and not be required to participate if she:
>
> . . ..
>
> (5) Resides in a subdivision of the State where the JOBS program is available, but in a location which is so remote from a JOBS program or activity that effective participation is precluded. The individual shall be considered remote if a round trip of more than 2 hours by reasonably available public or private transportation, exclusive of time necessary to transport children to and from a child care facility, would be required for a normal work or training day.

The hearing examiner found that West Bend is located thirty-seven miles from Sheboygan and the estimated driving time is fifty minutes. The distance between Sheboygan and West Bend was based on the Wisconsin Department of Transportation's official state highway map. The examiner took notice that the average speed of forty-five miles per hour is an accurate estimated time for interurban driving and is the method used by the American Automobile Association.

Lee asserts that the hearing examiner's method of using a state highway map does not take into account year-round route accessibility. Additionally, she contends that the examiner's methods only measured intercity travel, border to border, not the time it would take once Lee arrived at the city to get to her home or to the West Bend site.

██

We agree with the State that the hearing examiner correctly concluded that the distance Lee had to travel to West Bend did not exempt her from the job based on remoteness. Using the official state highway map and an estimated driving time of forty-five miles per hour, the examiner concluded that the driving time was fifty minutes one way. Additionally, a witness testified that the drive was approximately forty-five to fifty minutes. We conclude that the hearing examiner's estimated driving time of fifty minutes is supported by the evidence.

██

Lee also argues that "there is questionable authority for a JOBS program subcontractor to require an activity or employment wholly outside of its political subdivision. This itself may be a violation of state regulation." We disagree. There is no requirement that JOBS-related employment be available in the same political subdivision and we will not create such a limitation.

*By the Court.*—Order affirmed.