Mitchell J. HUBERT, Plaintiff-Respondent,†

v.

LABOR & INDUSTRY REVIEW COMMISSION, Defendant-Appellant,

WISCONSIN PUBLIC SERVICE CORPORATION and Ansul Fire Protection, Defendants.

Court of Appeals

*No. 94–0230. Submitted on briefs June 28, 1994.—Decided August 2, 1994.*

(Also reported in 522 N.W.2d 512.)

†Petition to review denied.

591

For the defendant-appellant the cause was submitted on the briefs of *David B. Nance* of the *Labor and Industry Review Commission* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Michael J. Palid* of Marinette.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   The Labor and Industry Review Commission (LIRC) appeals a trial court order reversing its determination that Mitchell Hubert is ineligible for unemployment compensation benefits and ordering Hubert to repay benefits previously received. LIRC contends that the trial court erred by concluding that Hubert's refusal to accept employment offered by Wis-

consin Public Service Corporation (WPS) was with good cause because the employment offered was not suitable. LIRC argues that while the WPS position was not similar to Hubert's former position with Ansul Fire Protection, the work was suitable and Hubert refused the offer of employment without good cause. Because we conclude that LIRC's interpretation and application of § 108.04(8), STATS., was reasonable and consistent with the statute's language and that LIRC properly concluded that Hubert failed to accept suitable work without good cause, we reverse the order.

Hubert was previously employed by Ansul Fire Protection as the business manager of Ansul's industrial fire fighting foam product division, a skilled high level management position. His responsibilities included overall market penetration and profitability of the foam agent and hardware, introducing marketing and sales strategies, negotiating licenses and providing technical start-up for other foam concentrate lending facilities and presenting training seminars nationally and internationally. Hubert has a four-year degree in chemistry as well as technical experience with extinguishing agents and hardware.

After approximately twelve and one-half years' employment with Ansul, Hubert was laid off on August 24, 1990. At the time of the layoff, Hubert earned $49,000 per year plus bonuses and benefits. Hubert received severance pay through December 24, 1990, with the payments properly allocated in advance pursuant to § 108.05(5), STATS. Hubert did not apply for unemployment compensation benefits during this period.

On December 14, 1990, WPS offered Hubert an entry-level position as a marketing representative. The position involved direct retail contact with residential

customers and required a two-year technical degree. WPS offered Hubert a starting salary of $23,700 per year plus benefits. Hubert was given several days to consider the offer. Hubert ultimately declined the offer, stating that the pay was inadequate, although he indicated his willingness to accept a position that paid in the high $30,000 range.

Approximately one week later, Hubert applied for unemployment compensation benefits. On his application, Hubert disclosed the WPS offer of employment, that he had rejected the offer and his reasons for rejecting the offer. The department granted Hubert unemployment compensation benefits. Several months later the department reversed its earlier decision granting benefits, requested Hubert to repay the $2,587 in benefits he received and reduced his future benefits by 50%. The administrative law judge (ALJ) affirmed the department's initial determination, based on her conclusions that the six-week canvassing period under § 108.04(8)(d), STATS., had expired, that the WPS offer of employment was suitable and that Hubert had failed to accept that offer of employment without good cause. Hubert appealed this decision to LIRC, which affirmed.

Hubert appealed to the trial court, which reversed LIRC's decision. While the trial court rejected Hubert's argument that the six-week canvassing period did not begin until he was no longer receiving severance pay, the trial court concluded that the WPS offer of employment was not suitable and that Hubert had good cause for refusing to accept the offer. The trial court found that the offer involved a 55% pay reduction, required a significantly lower grade of skill and involved significantly less responsibility than Hubert's position with Ansul.

We review LIRC's decision under the same standard of review as the trial court. *Nelson v. LIRC*, 123 Wis. 2d 221, 224, 365 N.W.2d 629, 630 (Ct. App. 1985). Our review of this matter is limited to the question whether LIRC's decision was correct and we do not address the correctness of the trial court's decision. *Stafford Trucking, Inc. v. DILHR*, 102 Wis. 2d 256, 260, 306 N.W.2d 79, 82 (Ct. App. 1981). In the absence of fraud or lack of support by substantial and credible evidence, LIRC's factual findings are binding on this court. Section 102.23(1)(a) and (6), STATS. Here, the parties do not dispute LIRC's factual findings, only its legal conclusions.

Our supreme court discussed the appropriate standards of review of an agency's legal conclusions and statutory interpretation in *Jicha v. DILHR*, 169 Wis. 2d 284, 290-91, 485 N.W.2d 256, 258-59 (1992):

> This court has generally applied three levels of deference to conclusions of law and statutory interpretation in agency decisions. First, if the administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute, the agency determination is entitled to "great weight." The second level of review provides that if the agency decision is "very nearly" one of first impression it is entitled to "due weight" or "great bearing." The lowest level of review, the *de novo* standard, is applied where it is clear from the lack of agency precedent that the case is one of first impression for the agency and the agency lacks special expertise or experience in determining the question presented. (Emphasis in original; citations omitted.)

Because LIRC has longstanding experience, technical competence and specialized knowledge in administering the unemployment compensation statutes, we conclude that its interpretation and application of those statutes is entitled to great weight. Under this standard, we uphold LIRC's interpretation and application of the statute as long as it is reasonable and consistent with the statute's language, regardless of whether other interpretations are reasonable. *See Sauk City v. WERC*, 165 Wis. 2d 406, 413, 477 N.W.2d 267, 270 (1991).

At issue in this appeal are LIRC's interpretation and application of the provisions of the unemployment compensation statutes requiring an applicant to have good cause to refuse to accept an offer of employment. The relevant portions of § 108.04(8), STATS., provide:

> (a)  If an employe fails, without good cause, to accept suitable work when offered, the employe is ineligible to receive benefits . . . .
>
>     . . . .
>
> (d)  An employe shall have good cause under par[ ]. (a) . . . if the department determines that the failure related to work at a lower grade of skill or significantly lower rate of pay than applied to the employe on one or more recent jobs, and that the employe had not yet had a reasonable opportunity, in view of labor market conditions and the employe's degree of skill, but not to exceed 6 weeks after the employe became unemployed, to seek a new job substantially in line with the employe's prior job skill and rate of pay.

We first address Hubert's contention that the trial court erred by upholding LIRC's interpretation of

§ 108.04(8)(d), STATS., that the six-week canvassing period began on August 24, when Hubert stopped working for Ansul, rather than on December 24, when Hubert no longer received severance pay.[1] This dispute centers around the meaning of the phrase "became unemployed."

LIRC interprets the phrase "became unemployed" to mean the point at which the applicant is no longer providing services to the employer. As we stated previously, this interpretation is entitled to great weight and will be upheld as long as it is reasonable and consistent with the statute's language. *See Sauk City*, 165 Wis. 2d at 413, 477 N.W.2d at 270.

Hubert argues that LIRC's interpretation is unreasonable and inconsistent with several other provisions of the unemployment compensation statutes. Hubert notes that the term "unemployed" is not specifically defined in ch. 108, STATS. Hubert points us to § 108.02(25), which provides, "An employe is 'totally unemployed' in any week for which he earns no wages." Because severance pay is included in the definition of wages, found in § 108.02(26), Hubert earned wages through December 24. Hubert goes on to note that he was not "totally unemployed" until he no longer earned severance pay. Thus, Hubert asserts, because he was not "totally unemployed" until December 24, as that term is defined in § 108.02(25), he did not become

---

[1] LIRC contends that this issue is not properly before us because Hubert failed to raise the issue in a cross-appeal. Because Hubert is merely seeking the correction of an error as an alternative ground for sustaining the trial court's order, no cross-appeal was necessary. *See Weber v. Cedarburg*, 125 Wis. 2d 22, 30 n.5, 370 N.W.2d 791, 795 n.5 (Ct. App. 1985).

"unemployed", as that term is used in § 108.04(8)(d), until December 24.

LIRC, on the other hand, asserts that the statutory language and overall scheme used in ch. 108, STATS., indicates the legislature's intent that the terms "totally unemployed" and "unemployed" have distinct meanings. We note that these terms, as well as the term "partially employed," are used throughout ch. 108. These terms are not used interchangeably and in at least one instance all three terms are used in the same section. *See* § 108.05, STATS. Where the legislature uses similar but different terms in a statute, particularly within the same section, we presume it intended those terms to have different, distinct meanings. *Armes v. Kenosha County*, 81 Wis. 2d 309, 318, 260 N.W.2d 515, 519 (1977). Further, we note that while the term "unemployed" is not defined in ch. 108, "employment" is specifically defined in § 108.02(15)(a) as "any service . . . performed by an individual for pay." Because unemployment is the opposite of employment, LIRC's interpretation that a person becomes unemployed when the person is no longer performing services for the employer is both reasonable and consistent with the language and statutory scheme of ch. 108.

Hubert argues that LIRC's interpretation would lead to duplication of benefits because a person receiving allocated severance pay benefits would also be eligible for unemployment compensation benefits. Persons receiving allocated severance pay benefits are included within the definition of "partially employed" and must first meet the eligibility requirements of § 108.04 and § 108.05(3), STATS., to receive reduced benefits. Because under § 108.05(3) unemployment

compensation benefits are reduced by at least 67% for partially unemployed persons, the possibility of duplication of benefits is not great. We therefore uphold LIRC's determination that Hubert became unemployed on August 24, when he ceased performing services for Ansul.

We now turn to LIRC's interpretation of "suitable work," as that term is used in § 108.04(8)(a), STATS. When the legislature created § 108.04(8), it declined to codify a definition of "suitable work." The Advisory Committee on Unemployment Compensation explained, "Experience has shown that the factors relating to suitability of employment are so numerous and so interrelated that it is inadvisable to try to codify them. In short, it is desirable to leave the question of suitability of work as an element of 'cause' to the commission's discretion in the same manner as are other factors relating to cause." The fact that the legislature has not defined "suitable work" or "good cause" does not, however, mean that LIRC's determination of whether an applicant has failed to accept suitable work with good cause is unreviewable.

LIRC explained in its decision that it applies a "sliding scale" to job refusal issues. Once the canvassing period has expired, the length of unemployment becomes a factor, in that the longer an applicant has been unemployed, the more the applicant may be expected to "lower his sights" and accept work at a lower rate of pay and grade of skill than that of previous employment. Hubert contends that this "rule" is inconsistent with WIS. ADM CODE § ILHR 126.0001(20), which defines suitable work as "work that is reasonable considering the claimant's training and experience." We note, however, that LIRC's sliding scale is essentially the definition contained in WIS. ADM

600

CODE § ILHR 126.0001(20) with an additional factor. Thus, LIRC's definition of suitable work becomes "work that is reasonable considering the claimant's training and experience and the length of the claimant's unemployment extending beyond the six-week canvassing period in § 108.04(8)(d)."

■

We conclude that this definition of suitable work is reasonable and consistent with the policies enunciated in § 108.01, STATS., to stabilize employment and to minimize, prevent and "share more fairly" the economic burdens resulting from unemployment. As our supreme court stated in *Roberts v. Chain Belt Co.*, 2 Wis. 2d 399, 403, 86 N.W.2d 406, 408 (1957), however, the unemployment compensation statutes were "not enacted to provide relief in lieu of wages when reasonable work is available which the employe can but will not do." We therefore uphold LIRC's interpretation of suitable work as "work that is reasonable considering the claimant's training and experience and the length of the claimant's unemployment extending beyond the six-week canvassing period in § 108.04(8)(d)."

We now review LIRC's determination that the WPS offer was reasonable, considering Hubert's training and experience and the fact that Hubert has been unemployed for eleven weeks beyond the six-week canvassing period. LIRC noted that the pay offered by WPS was less than what he received at Ansul, that the WPS job required slightly different skills and that the WPS job was a entry level, rather than upper-level management. LIRC further found that the pay offered by WPS was slightly greater than the prevailing market rate for the job offered.

While the WPS offer paid substantially less than Hubert received at his employment with Ansul and demanded less of Hubert's training and skill, we conclude that LIRC's conclusions are supported by the evidence, reasonable and consistent with the statute's language. Hubert had been unemployed for a total of seventeen weeks and was unwilling to leave the Menominee, Michigan, area. Hubert thus had little prospect for employment at a position involving higher pay and more responsibility than the WPS position. Because the salary offered was reasonable for the job offered, the prospects for better employment in the area within which Hubert restricted his search were slim and Hubert had been unemployed for a substantial period of time, LIRC properly concluded that Hubert failed to accept suitable work without good cause.

*By the Court.*—Order reversed.