Wisconsin DEPARTMENT OF INDUSTRY, LABOR & HUMAN
RELATIONS—UNEMPLOYMENT COMPENSATION DIVISION,
Plaintiff-Respondent,

v.

Wisconsin LABOR & INDUSTRY REVIEW COMMISSION,
Defendant-Appellant,

Constance C. WILEMAN, Defendant.

Court of Appeals

*No. 94–2139. Submitted on briefs March 8, 1995.—Decided
April 6, 1995.*

(Also reported in 535 N.W.2d 6.)

For the defendant-appellant the cause was submitted on the briefs of *David B. Nance* of *Labor & Industry Review Commission.*

For the plaintiff-respondent the cause was submitted on the brief of *Daniel J. Waite* of *Department of Industry, Labor and Human Relations—Unemployment Compensation.*

Before Eich, C.J., Gartzke, P.J., and Vergeront, J.

VERGERONT, J. The Wisconsin Labor and Industry Review Commission (LIRC) appeals from an order reversing its decision that Constance Wileman was eligible for unemployment compensation benefits. LIRC determined that Wileman had good cause to refuse a job offer, reversing the decision of the administrative law judge of the Unemployment Compensation Division of the Department of Industry, Labor and Human Relations (department). LIRC argues that in spite of the limitation of the "canvassing period" provided for in § 108.04(8)(d), STATS., to six weeks, a claimant may turn down an offer that is not "suitable work" after that six-week period and still be eligible for benefits. Because we conclude that LIRC's interpretation and application of § 108.04(8) was reasonable and consistent with the statutory language, we reverse the trial court's order.

Wileman had worked for the Piggly-Wiggly store in Janesville for over twelve years when she and all the other employees of the store were terminated on October 3, 1992, as the result of the sale of the store. Wileman was a head cashier, with responsibility for bookkeeping, scheduling thirty-five to forty employees, supervising front end operations in the store, cashiering, customer service, daily computer input, bank deposits, balancing cash drawers, handling customer and employee complaints, and projecting sales. She earned $12.10 per hour and also received health benefits and vacation pay.

When Wileman learned in mid-September 1992 that she would lose her job on October 3, she began to look for another job immediately. She registered at Job Service as soon as her employment ended even though

she knew she would be receiving severance pay for the next eight weeks. She applied for approximately nineteen jobs in her area. She knew she might not be able to find a job that paid as much as she earned at Piggly Wiggly, but she hoped to find one paying $7 or $8 per hour.

Wileman's first job offer was from Hufcor Manufacturing of Janesville towards the end of November 1992. The position was that of mail clerk, delivering mail within the plant and performing associated clerical duties. The pay was $6 per hour, and Wileman would have had to pay her own insurance.

Wileman's severance pay ran out about this time. While she was considering whether to accept the offer from Hufcor, she applied for unemployment benefits. Wileman decided to reject Hufcor's offer, which she did on December 3, 1992, because the pay was so low that she would be unable to pay her bills after her partial unemployment benefits ran out. She was also concerned that she would not be able to continue to look for a better job because the job at Hufcor was full-time on the day shift.

When Wileman's rejection of the offer came to the attention of the department, the department issued an initial determination that Wileman did not have good cause for failing to accept the offer and, therefore, was ineligible to receive benefits. Wileman appealed this determination and, following a hearing before an administrative law judge, the administrative law judge affirmed it. Wileman appealed to LIRC, which concluded that she had good cause to refuse to accept the offer and was not disqualified under § 108.04(8)(a), STATS.

The department sought judicial review of LIRC's decision under § 108.09(7)(a), STATS. The trial court

reversed LIRC's decision. It considered the language of § 108.04(8)(a) and (d), STATS., to be clear and unambiguous and to preclude a finding of good cause for refusal to accept a job at a lower skill level or at significantly lower pay if that refusal occurred after six weeks from the date on which the claimant became unemployed.

We review LIRC's decision under the same standard of review as the trial court. *Nelson v. LIRC*, 123 Wis. 2d 221, 224, 365 N.W.2d 629, 630 (Ct. App. 1985). Our review is limited to determining whether LIRC's decision was correct and we do not address the correctness of the trial court's decision. *Stafford Trucking, Inc. v. DILHR*, 102 Wis. 2d 256, 260, 306 N.W.2d 79, 82 (Ct. App. 1981). In the absence of fraud or lack of support by substantial and credible evidence, LIRC's factual findings are binding on this court. Section 102.23(1)(a) and 102.23(6), STATS.

In reviewing an agency's legal conclusions and statutory interpretation, there are three possible standards of review:

> This court has generally applied three levels of deference to conclusions of law and statutory interpretation in agency decisions. First, if the administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute, the agency determination is entitled to "great weight." The second level of review provides that if the agency decision is "very nearly" one of first impression it is entitled to "due weight" or "great bearing." The lowest level of review, the *de novo* standard, is applied where it is clear from the lack of agency precedent that the case is one of first impression for the agency and the agency lacks spe-

cial expertise or experience in determining the question presented.

*Jicha v. DILHR*, 169 Wis. 2d 284, 290-91, 485 N.W.2d 256, 258-59 (1992) (citations omitted).

Because LIRC has longstanding experience, technical competence and specialized knowledge in administering the unemployment compensation statutes, we conclude that its interpretation and application of those statutes is entitled to great weight. Under this standard, we uphold LIRC's interpretation and application of the statute as long as it is reasonable and consistent with the statute's language, regardless of whether other interpretations are reasonable. *See Sauk County v. WERC*, 165 Wis. 2d 406, 413, 477 N.W.2d 267, 270 (1991).

We reject the department's argument that we should alter this standard of review because the department has expertise equal to or greater than LIRC in interpreting the unemployment compensation statutes. Where deference to an agency decision is appropriate, we are to accord that deference to LIRC, not to the department. *DILHR v. LIRC*, 161 Wis. 2d 231, 245, 467 N.W.2d 545, 550 (1991).

This appeal concerns LIRC's interpretation of the statutory provisions requiring that a claimant have good cause to refuse to accept an offer of employment. The relevant portions of § 108.04(8), STATS., are:

> (a)  If an employe fails, without good cause, to accept suitable work when offered, the employe is ineligible to receive benefits . . . .
>
> . . . .
> (d)  An employe shall have good cause under par. (a) . . . if the department determines that the

397

failure related to work at a lower grade of skill or significantly lower rate of pay than applied to the employe on one or more recent jobs, and that the employe had not yet had a reasonable opportunity, in view of labor market conditions and the employe's degree of skill, but not to exceed 6 weeks after the employe became unemployed, to seek a new job substantially in line with the employe's prior job skill and rate of pay.

LIRC argues that para. (d) permits claimants to postpone "lowering their sights" for a period of six weeks. During this time period, according to LIRC, claimants have the right to refuse an offer of work at a lower grade of skill or significantly lower rate of pay. After the six-week period, LIRC applies a "sliding scale" under para. (a), whereby claimants must "lower their sights" progressively as more time passes. LIRC argues that because para. (a) does not define "good cause" or "suitable work" but leaves this to LIRC's discretion, LIRC is not precluded from taking lower skill level or pay into account after the six-week period. According to LIRC, para. (d) does no more than provide one set of circumstances under which considerations of lower skill level or pay can provide good cause under para. (a).

The department contends that LIRC's interpretation of paragraphs (a) and (d) is unreasonable. The only reasonable interpretation, argues the department, is that after six weeks, there is no good cause if a claimant rejects an offer because of lower skill level or pay. LIRC acknowledges that the department's interpretation is also reasonable, but responds that its (LIRC's) interpretation must prevail because it is reasonable and consistent with the statutory language.

398

In *Hubert v. LIRC*, 186 Wis. 2d 590, 522 N.W.2d 512 (Ct. App. 1994), we considered LIRC's interpretation and application of para. (a) in a different context. LIRC had denied benefits to a claimant on the ground that he had failed to accept a suitable offer of work without good cause. One of the issues was when the six-week canvassing period under para. (d) began—when the claimant stopped working or when he stopped receiving severance pay. LIRC decided that the period began when he stopped working and, therefore, had already expired when he refused the job offer. LIRC also decided that the job offered was suitable, rejecting the claimant's position that it was not suitable because the pay was inadequate and the skill level too low. We affirmed LIRC's conclusions on both the starting date of the canvassing period and the suitability of the job offered.

In deciding the second issue, we discussed LIRC's interpretation of "suitable work" as that term is used in § 108.04(8)(a), STATS.:

> When the legislature created § 108.04(8), it declined to codify a definition of "suitable work." The Advisory Committee on Unemployment Compensation explained, "Experience has shown that the factors relating to suitability of employment are so numerous and so interrelated that it is inadvisable to try to codify them. In short, it is desirable to leave the question of suitability of work as an element of 'cause' to the commission's discretion in the same manner as are other factors relating to cause." The fact that the legislature has not defined "suitable work" or "good cause" does not, however, mean that LIRC's determination of whether an applicant has failed to accept suitable work with good cause is unreviewable.

LIRC explained in its decision that it applies a "sliding scale" to job refusal issues. Once the canvassing period has expired, the length of unemployment becomes a factor, in that the longer an applicant has been unemployed, the more the applicant may be expected to "lower his sights" and accept work at a lower rate of pay and grade of skill than that of previous employment. Hubert contends that this "rule" is inconsistent with WIS. ADM. CODE § ILHR 126.0001(20), which defines suitable work as "work that is reasonable considering the claimant's training and experience." We note, however, that LIRC's sliding scale is essentially the definition contained in WIS. ADM. CODE § ILHR 126.0001(20) with an additional factor. Thus, LIRC's definition of suitable work becomes "work that is reasonable considering the claimant's training and experience and the length of the claimant's unemployment extending beyond the six-week canvassing period in § 108.04(8)(d)."[1]

We conclude that this definition of suitable work is reasonable and consistent with the policies enunciated in § 108.01, STATS., to stabilize employment and to minimize, prevent and "share more fairly" the economic burdens resulting from unemployment.

*Hubert*, 186 Wis. 2d at 600-01, 522 N.W.2d at 516.

In *Hubert*, LIRC denied benefits. Therefore, we were not presented with the issue of whether LIRC could find that work was not suitable because of lower

---

[1] WISCONSIN ADM. CODE ch. ILHR 126, as it existed at the time of LIRC's decision as to Hubert's eligibility and at the time of LIRC's decision as to Wileman's eligibility, was repealed and a new ch. ILHR 126 was created, effective November 1, 1994. The new chapter does not contain a definition of "suitable work." We do not consider the effect of this change, if any, since it occurred after LIRC's decision in this case.

pay and skill level where the offer was refused after the six-week canvassing period. More precisely, although we held that LIRC's definition of suitable work under para. (a) was reasonable, we were not asked to consider whether it was reasonable in light of para. (d). We consider that issue now.

In *Hubert*, we noted that the legislature declined to codify a definition of "suitable work" because the factors relating to suitability were so numerous and interrelated. The legislature chose to leave the interpretation of "suitable work" and "good cause" to the department's discretion, except that para. (d) describes a particular circumstance in which the department *must* find good cause: where a job offer is refused within six weeks because the job involves a lower grade of skill or significantly lower pay. However, para. (d) does not state that these two factors may not be considered in the definition of suitable work after six weeks. As LIRC points out, para. (d) does not say that failure to accept work for either reason constitutes good cause "only if" that failure occurs within six weeks. Rather, it states that good cause exists if the failure to accept is for either reason, "and" the failure occurs within six weeks.

LIRC's interpretation of para. (d)—that it permits a claimant to refuse all offers of work that involve lower skill or lower pay for six weeks—is consistent with the statutory language. So interpreted, it does not conflict with LIRC's interpretation of suitable work under para. (a). Under para. (a), after the six weeks has expired, LIRC considers the pay and skill level in relation to how long the claimant has been out of work. There is certainly nothing in the language of para. (a) that prevents LIRC from considering these two factors

in deciding whether a claimant has refused suitable work without good cause.

We conclude LIRC's interpretation of paragraphs (a) and (d) is reasonable and consistent with the statutory language. It gives claimants a short period of time within which they may refuse job offers that involve lower skills or pay and not risk ineligibility. After that time period, refusals for those reasons will be subject to scrutiny and may affect eligibility. But LIRC still retains the discretion to decide, based on a claimant's particular circumstances, whether the offer is for suitable work, taking into account the pay, skill level and period of unemployment.

The department argues that even if LIRC's interpretation of paragraphs (a) and (d) is correct, LIRC erred in deciding that Wileman had good cause to reject the offer from Hufcor because the work was not suitable. We disagree. Wileman had been out of work only two months. Her experience would permit her to perform work at a higher wage and a higher level of responsibility than that of a mail clerk. She was diligent in looking for appropriate work. The job at Hufcor paid less than half that of her previous job and would interfere with her ability to find a job that paid more. LIRC's conclusion that, "[g]iven the totality of circumstances" Wileman had good cause to decline the Hufcor offer, was based on credible evidence and was reasonable.

*By the Court.*—Order reversed.