Scott R. Bunker, Plaintiff-Respondent,

v.

Labor and Industry Review Commission, Defendant-Appellant,

David C. Anderson, Defendant.

Court of Appeals

*No. 01–3441. Submitted on briefs May 13, 2002.—Decided July 11, 2002.*

2002 WI App 216

(Also reported in 650 N.W.2d 864.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David B. Nance* of *Labor and Industry Review Commission.*

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Robert C. Howard, III,* Janesville.

Before Vergeront, P.J., Dykman and Roggensack, JJ.

¶ 1. VERGERONT, P.J. The Labor and Industry Review Commission (LIRC) appeals an order reversing its determination that Scott Bunker was ineligible for unemployment insurance benefits under WIS. STAT. § 108.04(5) (1999–2000)[1] because Bunker had been discharged for misconduct. The circuit court reversed LIRC's decision upon concluding that Bunker's right to procedural due process was violated because the administrative law judge (ALJ) was biased and the procedures were unfair. LIRC contends that Bunker waived all procedural and evidentiary objections; that even if we consider his objections, there were no errors; and that it correctly decided Bunker was discharged for misconduct. We choose to decide whether the hearing comported with due process and we conclude that it did. We do not address other procedural or evidentiary objections because we conclude Bunker waived them by not making them at the hearing or before LIRC. Finally, giving great weight deference to LIRC's decision, we conclude LIRC correctly determined that Bunker was discharged for misconduct. We therefore reverse the order of the circuit court and remand with instructions to enter an order affirming LIRC's decision.

## BACKGROUND

¶ 2. Bunker worked approximately five years as a floor mechanic for Anderson Floor Service, owned by David Anderson. Anderson discharged Bunker after an incident involving a customer, Brian Smith, who was having the floors of his residence refinished. The incident arose out of Smith's request that Bunker remove company-generated garbage from Smith's residence. An

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

initial determination in connection with Bunker's unemployment benefits concluded that Bunker was discharged for "misconduct" over the garbage removal incident and arguing with a customer, and as a result, Bunker was ineligible for unemployment benefits. Bunker requested a hearing before the ALJ.

¶ 3. Based on the evidence taken at the hearing, the ALJ made the following findings. Bunker had received a letter from Anderson clarifying the employer's policy with respect to garbage generated by the company at a customer's residence. Under the policy, Bunker was to discuss trash pickup with the customer and place as much of the company's garbage as possible at the curb for pickup. Bunker was warned that failure to follow the policy might result in termination. Bunker had not discussed garbage pickup with Smith and had failed to take two garbage bags to the curb for pickup. When Bunker arrived the next day, Smith asked that Bunker dispose of the two bags of garbage that were not picked up. Bunker questioned whether Smith knew how the municipality's garbage collection worked and did not agree to take the trash with him. When Smith became angry and asked that Bunker take the garbage, Bunker told him to "Get out of his face" and then left the jobsite without performing any work; as he was leaving, he called Smith an "asshole." Bunker did not notify his employer of the situation, but Smith complained to the employer.

¶ 4. The ALJ determined that Smith's testimony was credible and Bunker's testimony was "self-serving and not credible." In addition, the ALJ found that Bunker had failed to follow the garbage removal policy and left the jobsite without informing Anderson that the customer was upset. Therefore, the ALJ determined Bunker's behavior with Smith "evinced a wilful and

substantial disregard of the employer's interests and of the standards of conduct the employer has a right to expect." In addition, the ALJ found Bunker had been previously warned that such incidents could result in termination. The ALJ concluded the discharge was for misconduct connected with Bunker's employment.

¶ 5. The following events during the hearing are relevant to this appeal. In making the findings, the ALJ heard testimony of the incident from Anderson, Bunker, and Smith. Both Bunker and Anderson appeared at the hearing and were pro se. Smith was not present at the hearing and the ALJ took his testimony over the telephone.[2] At no time did Bunker object to Smith's testimony by telephone, and Bunker was given the opportunity to cross-examine Smith.

¶ 6. At the hearing, Anderson testified that he was not present at Smith's residence during the incident, but went to his home soon thereafter and obtained Smith's version of events. Anderson stated he could not recall what Smith told him; however he indicated he did write a brief summary of Smith's account of the incident. In addition, he had written a

---

[2] Anderson informed the ALJ that while Smith was not present at the hearing, Smith had said he would answer any questions if somebody called him. When the ALJ asked if there was any reason Anderson did not ask Smith to come to the hearing, Anderson responded:

He's been put through a lot in this situation . . . and all he wanted to have done was his floor refinished. He didn't want to get mixed up in a hassle of major proportions which this seems to be turning into.

. . . .

But he was very cooperative about describing events to me and giving me a signature when [I] asked for it, he's been very cooperative.

detailed summary of notes he took during an interview of Smith the day after the incident.[3] Anderson explained that he had presented this summary of the incident to Smith, who signed it as an accurate description of the events. When Smith was reached by telephone during the hearing, he did not have a copy of Anderson's detailed summary in front of him. After the ALJ described the summary to him, Smith testified it was the document he had signed and it was a true and accurate description of the events. Bunker was given the opportunity to disagree with any statements in Anderson's summary of events, which he did.

¶ 7. Anderson also presented a December 1999 letter from Anderson to Bunker concerning garbage pickup, which Bunker acknowledged he had received. The ALJ gave Bunker an opportunity to object to the receipt into evidence of both this letter and Anderson's summary of Smith's statement. Bunker indicated he had no objections and the court received both. At the close of the hearing, Bunker agreed that the ALJ had given him an opportunity to present evidence that led to his discharge and that if she had limited the evidence, she at least gave a reason why.

¶ 8. In cross-examining Anderson, Bunker attempted to ask him about a conversation Bunker had with Anderson's wife on whether she thought Bunker handled the situation properly. The ALJ determined that this conversation was irrelevant because Anderson's wife did not make the decision to discharge Bunker.

---

[3] On the detailed summary, Anderson noted that "this version is exactly the same as he[, Smith,] told me about 10:15 a.m. the morning of the incident."

¶ 9. Still acting pro se, Bunker appealed the ALJ's decision to LIRC. Bunker's letter of appeal simply stated, "This letter is an appeal to the decision issued by the [ALJ] and requests [your] review"; Bunker's appeal letter did not object to any procedure used by the ALJ. LIRC adopted the ALJ's findings of fact and conclusion as its own.

¶ 10. Bunker appealed LIRC's decision to the circuit court. Represented by counsel, Bunker argued that the findings of fact did not support a determination of misconduct and that the ALJ deprived Bunker of his right to procedural due process by calling Smith without prior notice and by not permitting Bunker to cross-examine Anderson' on ulterior motives he may have had for Bunker's termination.

¶ 11. The circuit court reversed LIRC's decision. It concluded that the hearing before the ALJ "was so lacking in fundamental procedural fairness as to deprive [Bunker of] the right to a meaningful hearing." The court determined the ALJ was biased because the ALJ: (1) decided without prior notice to Bunker to call and question Smith over the telephone, with the result that the ALJ could not observe Smith's demeanor; (2) allowed Anderson to relate what Smith said to him about the incident; (3) admitted Anderson's detailed summary of Smith's statement into evidence; and (4) did not permit Bunker to question Anderson about Bunker's conversation with Anderson's wife.

## DISCUSSION

¶ 12. On appeal, LIRC contends that Bunker waived his claims of procedural and evidentiary error by not raising them before the ALJ and, alternatively, that there were no errors. LIRC also asserts the find-

ings are supported by credible and substantial evidence and those findings support the conclusion of misconduct.

¶ 13. In deciding an appeal from a circuit court's order affirming or reversing an administrative agency's decision, we review the decision of the agency, not that of the circuit court. *Barnes v. DNR*, 178 Wis. 2d 290, 302, 506 N.W.2d 155 (Ct. App. 1993), *aff'd*, 184 Wis. 2d 645, 516 N.W.2d 730 (1994).

¶ 14. We first consider whether Bunker waived his right to judicial review of these claims of procedural and evidentiary error by the ALJ: taking Smith's testimony by telephone without prior notice to him, permitting Anderson to testify about what Smith had told him, admitting into evidence Anderson's hearsay summary of events, and not allowing Bunker to question Anderson about what Anderson's wife told Bunker. Bunker acknowledges he did not make any objections on these points during the hearing or raise them before LIRC. Nevertheless, he contends, these errors violated his right to procedural due process and we should therefore review them.

¶ 15. It is settled law that to preserve an issue for judicial review, a party must raise it before the administrative agency. *State v. Outagamie County Bd. of Adjustment*, 2001 WI 78, ¶ 55, 251 Wis. 2d 484, 628 N.W.2d 376. Judicial review of an administrative agency decision contemplates review of the record developed before the agency. *Id.* Ordinarily a reviewing court will not consider issues beyond those properly raised before the administrative agency, and a failure to raise an issue generally constitutes a waiver of the right to raise

the issue before the reviewing court. *Id.* However, this rule is one of administration, not of power, and therefore the reviewing court has the power to decide issues that were not raised before the administrative agency. *Id.* at ¶ 56 n.17.

■

¶ 16. Where all the necessary facts are of record and the issue is a legal one of great importance, reviewing courts may choose to decide that issue. *Id.* at ¶ 56. The principle behind this exception to the waiver rule is that the reviewing tribunal decides a legal issue on undisputed facts de novo, and therefore it is not essential to the court's review that the agency had an opportunity to address the issue.

¶ 17. On the other hand, when objections to evidence or procedure are not made before the fact-finding tribunal, the trier of fact does not have the opportunity to correct possible errors. *See State ex rel. Olson v. City of Baraboo Joint Review Bd.*, 2002 WI App 64, ¶ 23, 252 Wis. 2d 628, 643 N.W.2d 796. Also, when the objections, if made to the trier of fact, would have called for the exercise of discretion, the appellant is in effect asking the reviewing court to exercise its discretion, when that is exclusively the role of the trier of fact. *See Wisconsin Assoc. of Food Dealers v. City of Madison*, 97 Wis. 2d 426, 434–35, 293 N.W.2d 540 (1980). Although the reasons for applying the waiver rule strictly to the failure to object to evidence and procedure have developed in the context of an appellate court reviewing a trial court, we consider them equally applicable to a court reviewing an administrative agency's decision.

■

¶ 18. In this case, we choose to review Bunker's claims of error only to determine whether the hearing before the ALJ violated his right to procedural due

process, as he claims. Since this presents a question of law, our review is de novo. *Tateoka v. City of Waukesha Bd. of Zoning Appeals*, 220 Wis. 2d 656, 668–69, 583 N.W.2d 871 (Ct. App. 1998).

¶ 19. The fundamental requirement of procedural due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Rhonda R.D. v. Franklin R.D.*, 191 Wis. 2d 680, 701, 530 N.W.2d 34 (Ct. App. 1995) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). A fair and impartial decision maker at the hearing is a necessary component of procedural due process. *See Guthrie v. WERC*, 111 Wis. 2d 447, 454, 331 N.W.2d 331 (1983). There is a presumption of honesty and integrity in those serving as adjudicators in state administrative proceedings. *Nu-Roc Nursing Home, Inc. v. DHSS*, 200 Wis. 2d 405, 415, 546 N.W.2d 562 (Ct. App. 1996).

¶ 20. Our review of the record and the regulations governing hearings before the ALJ satisfies us that the procedures were fair, were consistent with the applicable regulations, and the ALJ did not demonstrate bias.

¶ 21. Under Wis. Stat. § 108.09(5)(a), unemployment insurance appeals are governed by general department rules, whether or not they conform to common law or statutory rules of evidence and other technical rules of procedure.[4] Under LIRC's rules, tele-

---

[4] Wisconsin Stat. § 108.09(5)(a) provides:

Except as provided in s. 901.05, [applying to certain medical test results,] the manner in which claims shall be presented, the reports thereon required from the employee and from employers, and the conduct of hearings and appeals shall be governed by general department rules, whether or not they conform to common

267

phone hearings are authorized in whole or in part. WIS. ADMIN. CODE § DWD 140.11(1).[5] The ALJ has the responsibility to develop the facts by calling and examining any witness the ALJ deems necessary, WIS. ADMIN. CODE § DWD 140.15(2),[6] and to secure the facts in as direct and simple a manner as possible, WIS. ADMIN. CODE § DWD 140.16(1).[7] Each party must be given the opportunity to examine and cross-examine witnesses, and the ALJ may limit the cross-examination so as not to unduly burden the record. Section DWD 140.15(1).[8]

law or statutory rules of evidence and other technical rules of procedure, for determining the rights of the parties.

[5] WISCONSIN ADMIN. CODE § DWD 140.11(1) provides in part:

(1) The department may conduct hearings in whole or in part by telephone when it is impractical for the department to conduct an in-person hearing, when necessary to ensure a prompt hearing or when one or more of the parties would be required to travel an unreasonable distance to the hearing location.

[6] WISCONSIN ADMIN. CODE § DWD 140.15(2) provides in part:

(2) The administrative law judge has the responsibility to develop the facts and may call and examine any witness that he or she deems necessary and may also determine the order in which witnesses are called and the order of examination of each witness.

[7] WISCONSIN ADMIN. CODE § DWD 140.16(1) provides:

(1) Statutory and common law rules of evidence and rules of procedure applicable to courts of record are not controlling with respect to hearings. The administrative law judge shall secure the facts in as direct and simple a manner as possible. Evidence having reasonable probative value is admissible, but irrelevant, immaterial and repetitious evidence is not admissible. Hearsay evidence is admissible if it has reasonable probative value but no issue may be decided solely on hearsay evidence unless the hearsay evidence is admissible under ch. 908, Stats.

[8] WISCONSIN ADMIN. CODE § DWD 140.15(1) provides: "Each party shall be given an opportunity to examine and cross-

There is no regulation requiring that the employer provide the employee with a list of potential witnesses or the exact testimony a witness will provide. Finally, hearsay evidence is admissible at hearings if it has reasonable probative value; however, no issue may be decided solely on hearsay evidence, unless admissible under WIS. STAT. ch. 908. Section DWD 140.16(1).

██

¶ 22. The record demonstrates that the ALJ acted within the scope of her authority under these statutes and rules in deciding to call Smith by telephone, questioning Smith, and limiting the cross-examination of Anderson to facts the ALJ considered relevant—the incident concerning Smith and Anderson's garbage removal policy. Bunker had the opportunity to present witnesses and evidence, cross-examine Anderson's witnesses on the subjects the ALJ considered relevant, and object to evidence. Anderson's summary of events as related by Smith could properly be admitted under WIS. ADMIN. CODE § DWD 140.16(1) even if hearsay, because it had reasonable probative value and was not the sole basis for the ALJ's decision in that the ALJ also relied on Smith's testimony.

¶ 23. We are satisfied that the ALJ was not biased and that Bunker had a meaningful opportunity to present his case. Insofar as Bunker is asserting claims of procedural and evidentiary error that do not implicate his right to procedural due process, we apply the waiver rule and do not discuss them further.

██

¶ 24. Bunker argues that the waiver rule should not apply at all because he was appearing pro se. We

examine witnesses. The administrative law judge may limit the cross-examination of witnesses so as not to unduly burden the record.

decline to make an exception solely for that reason. Many claimants appear pro se at unemployment insurance appeals, as do employers. The broad responsibilities of the ALJ under Wis. Admin. Code § DWD 140.15(2) were, no doubt, established with this in mind. Allowing claimants and employers to raise issues for the first time in the reviewing court, simply because they proceeded pro se before the agency, would seriously undermine the intended role of the administrative agency as the primary decision maker on unemployment benefits claims.

¶ 25. We now consider whether Bunker's conduct constituted "misconduct" under Wis. Stat. § 108.04(5).[9] This presents a question of law, which we review de novo. *Charette v. LIRC*, 196 Wis. 2d 956, 959, 540 N.W.2d 239 (Ct. App. 1995). Although we are not bound by an agency's conclusions of law, we may accord them varying degrees of deference.[10] *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996).

¶ 26. LIRC's determination whether an employee's conduct constitutes misconduct within the

---

[9] Wisconsin Stat. § 108.04(5) provides in part:

> **(5)** Discharge for misconduct. An employee whose work is terminated by an employing unit for misconduct connected with the employee's work is ineligible to receive benefits until 7 weeks have elapsed since the end of the week in which the discharge occurs and the employee earns wages after the week in which the discharge occurs equal to at least 14 times the employee's weekly benefit rate under s. 108.05(1) in employment or other work covered by the unemployment insurance law of any state or the federal government.

[10] There are three levels of deference granted to agency decisions: great weight deference, due weight deference, and de novo review. *Knight v. LIRC*, 220 Wis. 2d 137, 147, 582 N.W.2d 448 (Ct. App. 1998).

meaning of WIS. STAT. § 108.04(5) is entitled to great weight deference. *Lopez v. LIRC*, 2002 WI App 63, ¶ 16, 252 Wis. 2d 476, 642 N.W.2d 561.[11] Under the great weight standard, we uphold an agency's reasonable interpretation of the statute if it is not contrary to the clear meaning of the statute, even if we conclude another interpretation is more reasonable. *Id.* at ¶ 10. We therefore must determine whether LIRC's decision in this case is reasonable. The burden of establishing that the agency's interpretation is unreasonable is on the party seeking to overturn the agency's decision; the agency does not have to justify its interpretation. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 661, 539 N.W.2d 98 (1995).

¶ 27. "Misconduct" is not defined in WIS. STAT. ch. 108; however, in *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259–60, 296 N.W. 636 (1941), the supreme court set forth the following definition:

> [T]he intended meaning of the term "misconduct," as used in sec. [108.04(5)], Stats., is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's

[11] Generally we give great weight deference when: (1) the agency was charged by the legislature with the duty of administering the statute; (2) the interpretation of the agency is long-standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute. *Lopez v. LIRC*, 2002 WI App 63, ¶ 10, 252 Wis. 2d 476, 642 N.W.2d 561.

duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

¶ 28. Bunker first argues that a violation of the garbage disposal policy alone does not amount to misconduct for purposes of unemployment benefits eligibility, even if the violation may properly result in termination. While we agree that violation of a work rule that justifies discharge does not necessarily amount to misconduct, *Consolidated Constr. Co. v. Casey*, 71 Wis. 2d 811, 819–20, 238 N.W.2d 758 (1976), here there was in addition profane language directed at a customer.

¶ 29. Bunker next argues that his use of an obscenity is not proof of misconduct when considered in the overall context of the altercation with Smith, and that an employee cannot be fired for misconduct if he or she responds to verbal abuse from a customer with a strongly worded response. We disagree with Bunker's contention, given LIRC's findings of fact.

¶ 30. The weight and credibility of the evidence are for LIRC to evaluate. *Currie v. DILHR*, 210 Wis. 2d 380, 387, 565 N.W.2d 253 (Ct. App. 1997). We may not substitute our judgment for LIRC's on issues of fact. *Id.* We uphold LIRC's findings of fact on appeal if they are supported by credible and substantial evidence in the record. WIS. STAT. § 102.23(6); *Langhus v. LIRC*, 206 Wis. 2d 494, 501, 557 N.W.2d 450 (Ct. App. 1996). LIRC did not find that Bunker was provoked by the verbal abuse of a customer, but rather found that Bunker called

Smith an "asshole" in response to an exchange concerning the removal of garbage. Smith's testimony and Anderson's garbage removal policy support these findings of fact. Essentially, LIRC did not find Bunker's version of events credible, and that was LIRC's call to make.

¶ 31. LIRC could reasonably decide that the unprovoked use of profane language directed at a customer was not due to inadvertence, ordinary negligence, or a good-faith error in judgment. It also is reasonable to interpret "the standard of behavior which the employer has a right to expect" from its employees as encompassing the expectation that an employee will not be antagonistic and disrespectful toward a customer. We therefore conclude LIRC could reasonably view Bunker's violation of the work rule, together with his use of profane language directed at a customer, to constitute misconduct within the meaning of *Boynton Cab Co.*

¶ 32. LIRC's decision is reasonable in all other respects. LIRC's interpretation of "misconduct" does not directly contravene the statute or the definition set forth in *Boynton Cab Co.* In addition, LIRC considered the facts presented, in light of the principles developed in its prior decisions, and came to a reasonable conclusion. Therefore, we reverse the circuit court's order and direct that it enter an order affirming LIRC's decision that Bunker's conduct leading to his discharge constituted "misconduct" under Wis. Stat. § 108.04(5).

*By the Court.*—Order reversed and cause remanded with directions.