MILWAUKEE COUNTY, Plaintiff-Appellant,

v.

LABOR AND INDUSTRY REVIEW COMMISSION and
Kimberly D. Carrington-Field,
Defendants-Respondents.†

MILWAUKEE COUNTY, Plaintiff-Appellant,

v.

LABOR AND INDUSTRY REVIEW COMMISSION and
Ellettra L. Webster, Defendants-Respondents.†

Court of Appeals

*No. 2013AP1613. Submitted on briefs March 4, 2014.
—Decided April 15, 2014.*

**2014 WI App 55**

(Also reported in 847 N.W.2d 874.)

† Petition for Review filed.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Paul Bargren*, Milwaukee County corporation counsel and *James M. Carroll*, principal assistant corporation counsel.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Jeffrey J. Shampo*, Labor and Industry Review Commission.

Before Fine, Kessler and Brennan, JJ.

¶ 1. KESSLER, J.   Milwaukee County appeals an order of the circuit court affirming a decision of the Labor and Industry Review Commission. We reverse.

## BACKGROUND

¶ 2.   This is a review of a decision of the Labor and Industry Review Commission (LIRC) in which LIRC determined that two Milwaukee County (the County) employees—Kimberly D. Carrington-Field and Ellettra L. Webster—were not suspended for "good cause connected with [their] work," pursuant to WIS. STAT. § 108.04(6) (2011–12),[1] and therefore were entitled to unemployment benefits during the first three weeks of their suspension periods. For clarity, we provide Carrington-Field's and Webster's individual backgrounds.

---

[1] WISCONSIN STAT. § 108.04(6) provides, as relevant:

DISCIPLINARY SUSPENSION. An employee whose work is suspended by an employing unit *for good cause connected with the employee's work* is ineligible to receive benefits until 3 weeks have elapsed since the end of the week in which the suspension occurs or until the suspension is terminated, whichever occurs first. This subsection does not preclude an employee from establishing a benefit year during a period in which the employee is ineligible to receive benefits under this subsection if the employee qualifies to establish a benefit year under s. 108.06(2)(a).

(Emphasis added.) All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

## Kimberly Carrington-Field

¶ 3. On February 1, 2011, Carrington-Field was employed by Milwaukee County as a correctional officer. At approximately 6:00 a.m. that morning, Carrington-Field was to conduct an inmate check. Carrington-Field did not do so. Instead, at 6:49 a.m., the correctional officer that relieved Carrington-Field discovered an unconscious, unresponsive inmate in his cell with a noose around his neck. The inmate was pronounced dead of an apparent suicide. Following an investigation, the sheriff recommended that Carrington-Field be discharged for failing to follow the Milwaukee County Civil Service rules and procedures during her shift.

¶ 4. On December 7, 2011, Carrington-Field was suspended without pay, pending a hearing on charges and disciplinary action before the Personnel Review Board (PRB). Shortly thereafter, Carrington-Field applied for unemployment benefits.

¶ 5. The Department of Workforce Development issued the initial determination that Carrington-Field was suspended, but not for good cause connected with her work, pursuant to WIS. STAT. § 108.04(6), and was therefore entitled to unemployment benefits for the first three weeks of her suspension period. The County appealed the initial determination to an Administrative Law Judge (ALJ), arguing that it had good cause for suspending Carrington-Field. The ALJ upheld the initial determination.

¶ 6. The County appealed to LIRC. Relying on previous internal decisions, LIRC upheld the ALJ, finding:

> Employees who are off work during periods of non-disciplinary suspensions, or suspensions that are not

for good cause connected with the employee's work, are entitled to unemployment benefits.

The issue to be decided is whether . . . the employee's employment was suspended for good cause connected with her work.

In this case, the employee was, pursuant to the employer's civil service rules, suspended pending discharge. There was no discussion or paperwork given to the employee suggesting that the suspension . . . was punishment or discipline. Instead, the paperwork clearly stated that the level of discipline the employer was pursuing was discharge. But for the employer's civil service rules, the employee would have been discharged . . . . She was suspended pending a review of the matter by an administrative body. A suspension for that reason does not fall within the purview of WIS. STAT. § 108.04(6) . . . .

The commission therefore finds that . . . the employee's work was suspended by the employer but not as a suspension for good cause connected with her work, within the meaning of WIS. STAT. § 108.04(6)(a).

## Ellettra Webster

¶ 7. Webster was also employed by Milwaukee County as a corrections officer. On November 17, 2011, the County issued charges against Webster following an investigation "of tardy occurrences" on two dates. Webster was suspended without pay pending a hearing before the PRB and subsequently applied for unemployment benefits. The Department of Workforce Development issued an initial determination that Webster was suspended for good cause connected with her work and denied her unemployment benefits for the first three weeks of her suspension period.

¶ 8. Webster appealed the initial determination. The ALJ reversed the initial determination, finding that Webster's suspension was not "disciplinary" and that she was entitled to unemployment benefits for the relevant time period. The County appealed the ALJ's decision to LIRC. Again relying on its internal decisions, LIRC upheld the ALJ, using the exact same language as its decision in the Carrington-Field case:

> Employees who are off work during periods of non-disciplinary suspensions, or suspensions that are not for good cause connected with the employees work, are entitled to unemployment benefits.
>
> The issue to be decided is whether . . . the employee's employment was suspended for good cause connected with her work.
>
> In this case, the employee was, pursuant to the employer's civil service rules, suspended pending discharge. There was no discussion or paperwork given to the employee suggesting that the suspension . . . was punishment or discipline. Instead, the paperwork clearly stated that the level of discipline the employer was pursuing was discharge. But for the employer's civil service rules, the employee would have been discharged . . . . She was suspended pending a review of the matter by an administrative body. A suspension for that reason does not fall within the purview of WIS. STAT. § 108.04(6) . . . .
>
> The commission therefore finds that . . . the employee's work was suspended by the employer but not as a suspension for good cause connected with her work, within the meaning of WIS. STAT. § 108.04(6)(a).

## Appeal to the Circuit Court.

¶ 9. The County appealed both decisions to the Milwaukee County Circuit Court, where the cases were consolidated. The County argued that WIS. STAT.

§ 108.04(6), which provides that "[a]n employee whose work is suspended by an employing unit for good cause connected with the employee's work is ineligible to receive benefits until 3 weeks have elapsed since the end of the week in which the suspension occurs or until the suspension is terminated, whichever occurs first[,]" unambiguously applies to the employees' cases because both received suspensions for good cause connected with their work. LIRC argued that the term "good cause" is not defined by the statute, making the statute ambiguous, and that its interpretation of the statute, as articulated in its written decisions, was reasonable. Specifically, LIRC argued that neither Carrington-Field nor Webster received "disciplinary suspensions" that would warrant a withholding of their benefits. LIRC argued that the County's interpretation of § 108.04(6) would allow for a host of unreasonable scenarios that would contravene the intended purpose of the statute and would allow "any type of suspension" to be construed as a good cause suspension connected with an employee's work.

¶ 10.   The circuit court upheld LIRC's decision, finding "it was reasonable for [LIRC] to conclude that Wis. Stat. § 108.04(6) only applies to disciplinary suspensions," and that the employees' suspensions were not disciplinary because the suspensions were not "corrective." The circuit court agreed with LIRC that "despite what the sheriff may recommend, the discipline cannot occur unless [LIRC] or [the PRB] determines whether there is just cause to sustain the charges." The circuit court, therefore, found that Carrington-Field and Webster were immediately eligible for unemployment insurance benefits for the first three weeks of their suspension periods.

¶ 11.   The County now appeals.

170

## DISCUSSION

¶ 12.  All of the County's arguments on appeal center on its contention that Carrington-Field and Webster were each suspended for the same reason the County sought their termination—good cause connected with their work. Thus, the County contends, LIRC's interpretation of WIS. STAT. § 108.04(6) otherwise is unreasonable.

**Standard of Review.**

██

¶ 13.  "In deciding an appeal from a circuit court's order affirming or reversing an administrative agency's decision, we review the decision of the agency, not that of the circuit court." *Bunker v. LIRC*, 2002 WI App 216, ¶ 13, 257 Wis. 2d 255, 650 N.W.2d 864.

██

¶ 14.  We apply the highest level of deference—great weight—when:  "(1) the agency is charged by the legislature with administering the statute at issue; (2) the interpretation of the statute is one of longstanding; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity in the application of the statute." *See Kierstead v. LIRC*, 2012 WI App 57, ¶ 12, 341 Wis. 2d 343, 817 N.W.2d 878.

██ ██

¶ 15.  " 'Due weight deference [applies] when an agency has some experience in the area but has not developed the expertise that necessarily places it in a better position than a court to interpret and apply a statute.' " *Id.*, ¶ 13 (citation omitted; brackets in

171

*Kierstead*). "Under the due weight deference standard a court need not defer to an agency's interpretation which, while reasonable, is not the interpretation which the court considers best and most reasonable." *Id.* (quotation marks and citation omitted).

¶ 16.   We afford no deference to an agency's conclusion of law if the " 'issue before the agency is one of first impression or when an agency's position on an issue provides no real guidance.' " *Id.*, ¶ 14 (citation omitted).

¶ 17.   The County contends that LIRC has limited experience administering Wis. Stat. § 108.04(6) and that we should apply the due weight standard. LIRC argues that it is entitled to great weight deference because it:   is charged with the administration of cases involving suspensions under § 108.04(6); has long-standing experience in the interpretation and application of § 108.04(6); and has applied § 108.04(6) to cases similar to the one before this court. We agree that LIRC's decision is entitled to great weight deference because it is charged with the interpretation and application of § 108.04(6). *See, e.g., Bernhardt v. LIRC*, 207 Wis. 2d 292, 308 n.3, 558 N.W.2d 874 (Ct. App. 1996). Therefore, "[u]nder the great weight standard, we uphold an agency's reasonable interpretation of the statute if it is not contrary to the clear meaning of the statute, even if we conclude another interpretation is more reasonable." *Bunker*, 257 Wis. 2d 255, ¶ 26. "The burden of establishing that the agency's interpretation is unreasonable is on the party seeking to overturn the agency's decision; the agency does not have to justify its interpretation." *Id.*

¶ 18. Because we must apply the great weight standard of review, we must determine whether LIRC's interpretation of WIS. STAT. § 108.04(6) as applied to Carrington-Field and Webster was contrary to the clear meaning of the statute. We conclude that it was.

**Carrington-Field and Webster were suspended for good cause connected with their work.**

¶ 19. LIRC argues that neither Carrington-Field nor Webster was suspended for good cause connected to their work because neither was suspended for disciplinary purposes. Rather, LIRC argues that both were suspended pending an ultimate disciplinary determination. Accordingly, LIRC argues, WIS. STAT. § 108.04(6) is inapplicable to the employees at issue. We conclude that LIRC's reading of § 108.04(6) is unreasonable because it ignores the work-connected facts causing the requests for termination and the related suspensions pending completion of the hearing process.

▮▮▮▮

¶ 20. Our analysis must turn on an interpretation of WIS. STAT. § 108.04(6). "We first look to the language of the statute . . . . If the plain meaning of the statutory language is clear, we do not look to rules of statutory construction or other extrinsic aids . . . . Instead, we simply apply the language of the statute to the facts before us." *City of Kenosha v. LIRC*, 2000 WI App 131, ¶ 12, 237 Wis. 2d 304, 614 N.W.2d 508. "Only if the statute is ambiguous do we examine the scope, history, context, subject matter and purpose of the statute . . . . However, we may also consider the interpretation of the agency charged with a statute's administration." *Id.*

¶ 21. WISCONSIN STAT. § 108.04(6) states:

DISCIPLINARY SUSPENSION. An employee whose work is suspended by an employing unit for good cause connected with the employee's work is ineligible to receive benefits until 3 weeks have elapsed since the end of the week in which the suspension occurs or until the suspension is terminated, whichever occurs first. This subsection does not preclude an employee from establishing a benefit year during a period in which the employee is ineligible to receive benefits under this subsection if the employee qualifies to establish a benefit year under s. 108.06(2)(a).

¶ 22. The heart of LIRC's argument is that WIS. STAT. § 108.04(6) applies only to "disciplinary suspension[s]." LIRC relies on its previous internal decisions, as well as legislative history, to argue that a "good cause" suspension under § 108.04(6) is essentially the equivalent of a "disciplinary suspension" and therefore excludes the suspensions given to the employees at issue in this case. LIRC points out that prior to 1987, the statute referred to "disciplinary suspension" both in its title and in its text. However, by 1987 Wis. Act 38, § 25, § 108.04(6) was repealed and amended. The amendment removed "disciplinary suspension" from the text of the statute, but maintained the term in the statute's title. This history, LIRC contends, reflects a legislative intent to continue to limit the scope of the statute to disciplinary suspensions.

██ ██
¶ 23. It is well-settled law that the title of a statute may not "be used to alter the meaning of a statute or create an ambiguity." *Noffke v. Bakke*, 2009 WI 10, ¶ 25, 315 Wis. 2d 350, 760 N.W.2d 156. LIRC's interpretation of WIS. STAT. § 108.04(6) adds language to the rest of the statute that the legislature specifically removed. The plain language of the statute, following

the amendment LIRC describes, does not even contain the word "disciplinary." The statute makes no reference to discipline, hearings, investigations pending termination, or any other form of employer-corrective action. The plain language does not limit the statute's applicability to the terms LIRC infers the legislature meant to include. Nothing in the statute suggests that suspensions which are the result of "conduct connected with the employee's work" are excluded from the statute's requirements while awaiting the conclusion of pending investigations or hearings. Although "good cause" is not defined in the statute, the term has a commonly understood meaning, which is "a legally sufficient reason." *See* BLACK'S LAW DICTIONARY 213 (7th ed. 1999). We conclude that under this statute an employer's reason(s) for suspending an employee must involve specific conduct by the employee which is directly "connected to the employee's work." LIRC's interpretation of § 108.04(6) to the contrary would alter the plain meaning of an unambiguous statute. Accordingly, we conclude that LIRC's interpretation is not reasonable and we need not give it great weight.

¶ 24. A common sense reading of the statute dictates that Carrington-Field and Webster were indeed suspended for good cause based on conduct connected with their work. Carrington-Field failed to perform an inmate check—clearly an essential function of a corrections officer. The failure led to the delayed discovery of an inmate death, which might have been prevented had the check occurred in a timely manner. Webster's timely arrival at her place of employment is clearly an important requirement for a corrections officer who must relieve other officers at the conclusion of their shifts. Although two tardy appearances may not ultimately be held by the PRB to justify termination (the record does

not disclose the amount of tardiness or its cause), timely reporting for duty is nonetheless conduct connected with Webster's work. Based on the facts in this record, LIRC's conclusion that these employees' suspensions did not result from good cause connected with their work is based on an erroneous statutory interpretation.

¶ 25. We conclude that under the plain language of WIS. STAT. § 108.04(6), these suspensions were both for "good cause connected with the employee[s'] work." Neither Carrington-Field nor Webster is entitled to the unemployment benefits at issue for the time period described in the statute. For the foregoing reasons, we reverse the circuit court, and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded.