Wisconsin Department of Workforce Development,
Plaintiff-Respondent,†

v.

Wisconsin Labor and Industry Review Commission,
Defendant-Appellant,

Valarie Beres and Mequon Jewish Campus, Inc.,
Defendants.

Court of Appeals

*No. 2016AP1365. Submitted on briefs January 13, 2017.
—Decided March 8, 2017.*

2017 WI App 29

(Also reported in 895 N.W.2d 77.)

† Petition for Review filed.

185

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeffrey J. Shampo* of *Labor and Industry Review Commission*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Daniel J. LaRocque* and *Christina L. Galinat* of *Wisconsin Department of Workforce Development*, Madison.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶ 1. REILLY, P.J.   This case addresses eligibility for unemployment benefits when an employer has terminated an employee for misconduct due to absen-

teeism. The Wisconsin Department of Workforce Development (DWD) challenges the Labor and Industry Review Commission's (LIRC) interpretation of the absenteeism statute, Wis. Stat. § 108.04(5)(e) (2015–16).[1] Given our standard of review, we uphold LIRC's interpretation of § 108.04(5)(e) as reasonable and reverse the circuit court.

¶ 2. Prompted by concerns within the employer community that eligibility for unemployment benefits was too generous, the legislature, in 2013, made wholesale changes to the unemployment benefit law,[2] including modifying the absenteeism ineligibility criteria from "5 or more" absences without notice in a twelve-month period to "more than 2" absences without notice in a 120–day period, "*unless otherwise specified by his or her employer in an employment manual.*" *Compare* Wis. Stat. § 108.04(5g)(c) (2011–12), *with* § 108.04(5)(e) (emphasis added). It is this final clause that is at the heart of the dispute.

¶ 3. DWD argues that the statute by its plain language allows an employer to have an attendance policy more restrictive than the "2 in 120" standard, whereas LIRC argues that the "2 in 120" is the default standard. According to LIRC, while employers may be more generous (i.e., utilize the former "5 in 12 month" standard), an employer may not be more restrictive than the "2 in 120" default standard. As we are

---

[1] All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted.

[2] 2013 Wis. Act 20; *see also Operton v. LIRC*, 2016 WI App 37, ¶ 7, 369 Wis. 2d 166, 880 N.W.2d 169, *review granted,* 2016 WI 82, 371 Wis. 2d 616, 888 N.W.2d 236. The amendments to Wis. Stat. § 108.04(5)-(5g), enacted in 2013, became effective with respect to determinations issued on or after January 5, 2014.

required to accord deference to LIRC rather than DWD, and as we conclude that LIRC's interpretation is more reasonable given LIRC's three-step approach, we affirm LIRC's interpretation and reverse the circuit court.

## WIS. STAT. § 108.04(5)

¶ 4. As noted, in 2013, the legislature created a two-tier standard for denial of benefits: misconduct and substantial fault.[3] WIS. STAT. § 108.04(5)-(5g). "Misconduct" is defined in two parts. The first part defines misconduct as willful or wanton actions demonstrating deliberate violations; carelessness or negligence of such degree to manifest culpability, wrongful intent, or evil design; or the intentional and substantial disregard of an employer's interests. Sec. 108.04(5). In addition to these bad/intentional acts, the legislature enumerated seven specific circumstances that qualify as misconduct (i.e., no requirement to prove deliberate or bad acts on part of the employee): (1) use of drugs and alcohol, (2) theft from an employer, (3) conviction of a crime that affects the employee's ability to perform his or her job, (4) threats or harassment at work, (5) absenteeism or excessive tardiness, (6) falsifying business records, and (7) willful or deliberate violation of a written and uniformly applied government standard or regulation. Sec. 108.04(5)(a)-(g).

¶ 5. This case involves the legislature's definition of absenteeism. At the same time the legislature overhauled the unemployment insurance statute and cre-

---

[3] We addressed a challenge to the newly created substantial fault standard in *Operton*, 369 Wis. 2d 166, which is currently pending before the Wisconsin Supreme Court.

189

ated substantial fault, it also folded "absenteeism," which was previously a stand-alone statutory basis for denial of benefits under WIS. STAT. § 108.04(5g) (2011–12), into discharge for misconduct. Sec. 108.04(5)(e). The legislature further modified the definition of what constitutes "absenteeism" by removing any reference to the term "excessive" and defining misconduct as including "[a]bsenteeism by an employee on more than 2 occasions within the 120–day period before the date of the employee's termination, unless otherwise specified by his or her employer in an employment manual of which the employee has acknowledged receipt with his or her signature . . . if the employee does not provide to his or her employer both notice and one or more valid reasons for the absenteeism." *Id.*

### Statement of Facts

¶ 6. Valarie Beres, a registered nurse, was employed by Mequon Jewish Campus (MJC) and was in her ninety-day probationary period when she did not show for work on February 23, 2015, due to "flu-like symptoms." Beres had signed MJC's written attendance policy which provided that employees in their probationary period may have their employment terminated for one instance of "No Call No Show." MJC's policy required that an employee "call in 2 hours ahead of time" if they are unable to work. Beres did not call MJC prior to her shift to inform MJC that she would be unable to work. Beres was informed on February 26, 2015, that her employment was terminated.

¶ 7. Beres filed for unemployment benefits. DWD denied benefits on the ground of "misconduct" as Beres violated MJC's "No Call No Show" attendance policy. Beres appealed to LIRC, who reversed on the grounds

190

that employers may not be more restrictive than the "2 in 120" day standard and that Beres' actions did not meet the definitions of misconduct or substantial fault. The circuit court reversed LIRC, adopting DWD's argument that the plain language of WIS. STAT. § 108.04(5)(e) allows an employer to have its own rules as to what constitutes misconduct related to absenteeism. LIRC now appeals.

*Standard of Review*

¶ 8. While DWD is the agency charged with administering the unemployment insurance program, LIRC handles all appeals of unemployment insurance claims and has final review authority of DWD's interpretations. *Racine Harley-Davidson v. State Div. of Hearings & Appeals*, 2006 WI 86, ¶¶ 32–33, 292 Wis. 2d 549, 717 N.W.2d 184; *DILHR v. LIRC*, 161 Wis. 2d 231, 245, 467 N.W.2d 545 (1991). "Where deference to an agency decision is appropriate, we are to accord that deference to LIRC, not to the [DWD]."[4] *DILHR v. LIRC*, 193 Wis. 2d 391, 397, 535 N.W.2d 6 (Ct. App. 1995) (citing *DILHR*, 161 Wis. 2d at 245).

¶ 9. There are three levels of deference applicable to administrative agency interpretations: great weight, due weight, and de novo review. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 659–60, 539 N.W.2d 98 (1995). Great weight deference, the highest level of deference, is appropriate when "(1) the agency is charged by the legislature with administering the

---

[4] On appeal, our review is limited to whether LIRC's decision was correct. *DILHR v. LIRC*, 193 Wis. 2d 391, 396, 535 N.W.2d 6 (Ct. App. 1995).

statute at issue; (2) the interpretation of the statute is one of longstanding; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity in the application of the statute." *Milwaukee Cty. v. LIRC*, 2014 WI App 55, ¶ 14, 354 Wis. 2d 162, 847 N.W.2d 874 (citation omitted). Due weight deference applies "when an agency has some experience in the area but has not developed the expertise that necessarily places it in a better position than a court to interpret and apply a statute." *Id.*, ¶ 15 (citation omitted). De novo review is applied if the "issue before the agency is one of first impression or when an agency's position on an issue provides no real guidance." *Id.*, ¶ 16 (citation omitted).

¶ 10. LIRC argues for great weight deference as it asserts all four conditions are met, most notably that it has issued at least fifty uniform decisions applying Wis. Stat. § 108.04(5)(e) since the statute was amended. DWD argues for de novo review as this case involves a recently amended statute, and this specific issue is one of first impression.

¶ 11. We conclude that due weight deference is appropriate. LIRC clearly has "some experience" in this area as demonstrated by the fifty-plus decisions uniformly applying Wis. Stat. § 108.04(5)(e); however, we conclude that this case boils down to a legal issue of statutory analysis that is best determined by a court.[5]

_____

[5] We recognize that in *Operton*, 369 Wis. 2d 166, ¶ 20, we concluded that de novo review was appropriate. *Operton* involved a completely new legal concept not previously in existence: substantial fault. *Id.* Here, although the statute has been significantly amended, discharge due to absenteeism was previously provided for in the statute. *See* Wis. Stat.

*See Milwaukee Cty.*, 354 Wis. 2d 162, ¶ 15. "When employing due weight deference, we uphold the agency's interpretation and application as long as it is reasonable and another interpretation is not more reasonable." *deBoer Transp., Inc. v. Swenson*, 2011 WI 64, ¶ 34, 335 Wis. 2d 599, 804 N.W.2d 658.

## Analysis

¶ 12. Employing due weight deference, we examine LIRC's interpretation and application of WIS. STAT. § 108.04(5)(e). As noted above, DWD denied Beres' benefits because she acknowledged receipt of MJC's written employment manual, exceeded the employer's absenteeism standard (one absence), and failed to provide notice. DWD found that Beres' illness was a valid reason for her absence. DWD also found that because Beres did not give notice prior to her shift under the employer's policy, she committed an act of misconduct under § 108.04(5)(e).

¶ 13. LIRC reversed DWD. LIRC utilizes a three-step approach in analyzing discharges. First, LIRC determines whether the employee was discharged for misconduct by engaging in any of the actions enumerated in WIS. STAT. § 108.04(5)(a)-(g). If not, LIRC then determines whether the employee's actions constitute misconduct under § 108.04(5), the codified misconduct definition from *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259–60, 296 N.W. 636 (1941), and lastly, if mis-

§ 108.04(5g) (2011–12). Secondly, in *Operton*, LIRC's decision was contrary to its previous decisions on the same issue, thereby providing no guidance to us on the issue. *Operton*, 369 Wis. 2d 166, ¶¶ 16–19. We note that under either level of deference, de novo or due weight, we would reach the same conclusion in this case.

conduct is not found, LIRC then determines whether the discharge was for substantial fault.

¶ 14. LIRC agreed with DWD that Beres failed to call or show up for her scheduled shift on February 23, 2015, due to illness. LIRC found that MJC's written attendance policy was more strict than the "default standard" set forth in Wɪs. Sᴛᴀᴛ. § 108.04(5)(e) and that LIRC had previously held in *Gonzalez-Santan v. Therm-Tech of Waukesha Inc.*, UI Hearing No. 14608989MW at 3 (LIRC Mar. 10, 2015), http://lirc.wisconsin.gov/ucdecsns/4092.htm, that while an employee's absenteeism "might still be considered misconduct," absenteeism based on an attendance policy more strict than the default standard "would not be misconduct under paragraph (5)(e)."

¶ 15. LIRC then proceeded to address whether Beres' actions constituted misconduct under *Boynton Cab* as codified in Wɪs. Sᴛᴀᴛ. § 108.04(5). LIRC found that Beres' one absence due to illness and her failure to notify MJC prior to her absence was "an isolated incident of ordinary negligence resulting from her ill health." LIRC found that Beres' discharge was not for misconduct connected with her employment. Lastly, LIRC examined whether Beres' discharge was for substantial fault and found that Beres did not have reasonable control over her absence due to her illness and that her failure to notify MJC was due to inadvertence related to her illness.

¶ 16. LIRC has noted that the absenteeism provision in Wɪs. Sᴛᴀᴛ. § 108.04(5)(e) is "unique" as it "enables an employer to substitute a different standard to suit its needs, in this case a different quantity of absences." *Gonzalez-Santan*, UI Hearing No. 14608989MW at 3. In *Gonzalez-Santan*, LIRC deter-

194

mined that an employer's attendance policy could be "more generous" than the default standard, but if an employer's policy is "more strict" than the default standard, then the employee's behavior may "fall short of meeting the default standard in paragraph (5)(e)." *Id.* LIRC's reasoning, both in this case and in *Gonzalez-Santan*, is that the default standard, or misconduct/substantial fault, must be met in order to deny unemployment benefits due to absenteeism.

¶ 17.   DWD argues that the plain language of the statute allows for an employer to enact a policy more strict than the default standard; therefore, Beres' single absence without notice meets the statutory definition of misconduct. We conclude that LIRC's interpretation of a default standard within WIS. STAT. § 108.04(5)(e) is more reasonable. The fact that LIRC considers the default standard of "2 in 120" days to be a statutory floor for a § 108.04(5)(e) finding does not mean that misconduct under § 108.04(5) cannot be found for violating an employer's more restrictive attendance policy. LIRC's interpretation of § 108.04(5)(e) in conjunction with § 108.04(5) and public policy regarding unemployment benefits is a reasonable application of the unemployment benefit law as related to absenteeism.

¶ 18.   Wisconsin unemployment statutes are "remedial in nature," *Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 62, 330 N.W.2d 169 (1983), and any language resulting in forfeiture of unemployment benefits "should be read strictly to soften its severity," *Boynton Cab*, 237 Wis. at 259. "The law presumes that the employee is not disqualified from unemployment compensation." *Consolidated Constr. Co. v. Casey*, 71 Wis. 2d 811, 820, 238 N.W.2d 758 (1976). "[T]he [Un-

195

employment Compensation Act] should be 'liberally construed to effect unemployment compensation coverage for workers who are *economically dependent* upon others in respect to their wage-earning status.' " *Larson v. LIRC*, 184 Wis. 2d 378, 390, 516 N.W.2d 456 (Ct. App. 1994) (alteration in original) (quoting *Princess House*, 111 Wis. 2d at 62). The purpose of unemployment insurance benefits is to serve as a bridge for employees from one job to the next or "to cushion the effect of unemployment," absent "actions or conduct evincing such willful or wanton disregard of an employer's interests." Wɪs. Sᴛᴀᴛ. § 108.04(5); *Boynton Cab*, 237 Wis. at 258–59.

¶ 19.   An example illustrates the reasonableness of LIRC's interpretation that Beres' actions did not rise to the level to deny benefits. Assume Beres was found to be in a tavern during her scheduled shift and, when called, lied about being sick. At the opposite end of the spectrum, assume that Beres was involved in a serious car accident within two hours of the start of her shift due to no fault of her own and required hospitalization. In both of these examples, Beres would be in violation of MJC's attendance policy. LIRC's interpretation of Wɪs. Sᴛᴀᴛ. § 108.04(5) and (5)(e) allows an examination of the employee's conduct in relation to both the employer's policy as well as the policy that unemployment benefits should only be denied if the employee engages in actions constituting misconduct or substantial fault. The first example would likely qualify as misconduct under both § 108.04(5) and MJC's written attendance policy, whereas the second example is a technical violation of MJC's attendance policy, but is not an act of misconduct or substantial fault.

¶ 20. Employers are free to adopt a "zero-tolerance" attendance policy and discharge employees for that reason, but not every discharge qualifies as misconduct for unemployment insurance purposes. As our supreme court explained, "The principle that violation of a valid work rule may justify discharge but at the same time may not amount to statutory 'misconduct' for unemployment compensation purposes has been repeatedly recognized by this court." *Casey*, 71 Wis. 2d at 819–20. Similarly, this court found in *Operton* that employers have "the right to have high expectations of its employees and also [have] the right to discharge an employee for not meeting their expectations," but we concluded that high expectations were insufficient to deny unemployment benefits. *See Operton v. LIRC*, 2016 WI App 37, ¶ 31, 369 Wis. 2d 166, 880 N.W.2d 169, *review granted*, 2016 WI 82, 371 Wis. 2d 616, 888 N.W.2d 236.

*Conclusion*

¶ 21. Under due weight deference, we conclude that LIRC's interpretation and application of Wis. Stat. § 108.04(5) and (5)(e) is reasonable and more reasonable than an interpretation that can lead to absurd results. Accordingly, we conclude that LIRC properly determined that Beres' discharge was not for misconduct connected with her employment under § 108.04(5)(e). We reverse the circuit court's contrary order and affirm LIRC's decision and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed.

¶ 22. GUNDRUM, J. (*dissenting*). I dissent because the majority affords undue deference to LIRC's

197

interpretation of Wis. Stat. § 108.04(5)(e), and in doing so, adopts an incorrect interpretation of the statute.

¶ 23.   To begin, the majority incorrectly affords LIRC's interpretation "due weight" deference. I believe de novo review is appropriate because the statutory language in question is new and the correct interpretation of this language is an issue "of first impression." *See Milwaukee Cty. v. LIRC*, 2014 WI App 55, ¶ 16, 354 Wis. 2d 162, 847 N.W.2d 874 (citation omitted). As the majority points out, the statute "has been significantly amended." Majority, ¶ 11 n.5. LIRC's legal interpretation of these changes by the legislature is entitled to no deference. This is precisely the type of situation where courts should independently review LIRC's interpretation of a statute, so LIRC does not continue to erroneously apply the statute.

¶ 24.   Wisconsin Stat. § 108.04(5)(e) defines misconduct as:

> Absenteeism by an employee on more than 2 occasions within the 120–day period before the date of the employee's termination, unless otherwise specified by his or her employer in an employment manual of which the employee has acknowledged receipt with his or her signature, or excessive tardiness by an employee in violation of a policy of the employer that has been communicated to the employee, if the employee does not provide to his or her employer both notice and one or more valid reasons for the absenteeism or tardiness.

LIRC interprets this new language to mean that an employer policy defining misconduct may be less strict than the Wis. Stat. § 108.04(5)(e) "default standard" of more than two absences within 120 days, but may not be more strict. LIRC misreads the statute.

198

¶ 25.   The language plainly states that the default standard applies "unless otherwise specified . . . in an employment manual of which the employee has acknowledged receipt with his or her signature." Nothing in WIS. STAT. § 108.04(5)(e) suggests the legislature intended "unless otherwise specified . . ." to mean only "unless a less strict policy is specified." LIRC simply reads that language into the statute—never mind the legislature.

¶ 26.   In addition, whether a policy is more or less strict than the default standard may be in the eye of the beholder. Take the old "5 in 12 months" standard for example. The majority refers to that standard as "more generous" than the "more than 2 occasions within the 120–day period" standard, but is it? It would not seem "more generous" to an employee that had only two absences in each of three consecutive 120–day periods, for that conduct would not be considered misconduct under the new default standard (because it is not more than two absences in any given 120–day period), but under the old standard it would be considered "excessive" and affect unemployment benefits (because it amounts to more than five absences in twelve months). Or consider an employer policy subjecting an employee to termination on the basis of misconduct if he/she had more than one unexcused absence within thirty days. Would that be more or less strict than the default standard of termination on the basis of misconduct for more than two unexcused absences within 120 days? Under a "more than 1 in 30" policy, an employee could be terminated for misconduct if he/she had two absences within a thirty-day period, but under the default standard, the employee could not be terminated for misconduct unless he/she also had one more absence within the

following ninety days. By this view, the employer policy might seem more strict than the default standard. The employer policy would seem to be less strict than the default policy, however, if an employee had one unexcused absence in each of three or even four consecutive months. Under the employer's policy, the employee could not be terminated for misconduct because he/she was not absent more than one time within thirty days. Under the default standard, however, the employee could be terminated for misconduct —and lose unemployment benefits—because he/she would have been absent more than two times in 120 days.

¶ 27. LIRC of course recognizes all of this, which is why it really interprets WIS. STAT. § 108.04(5)(e) as requiring that an employee be in violation of *both* the default standard *and* his/her employer's standard in order for the termination to be considered to have been for misconduct.[1] This interpretation of course is completely inconsistent with the plain language of the statute, which, again, defines misconduct as "[a]bsenteeism by an employee on more than 2 occasions within the 120–day period before the date of the employee's termination, *unless otherwise specified* . . . in an employment manual." (Emphasis added.)

¶ 28. The legislature did not intend for LIRC to decide which employer policies are more or less strict than the default standard, because it did not write the statute that way. The legislature did not intend that absenteeism would only be considered misconduct if the employee was in violation of *both* his/her employer's standard *and* the default standard, because it did

---

[1] Of course, presumably the matter would not even be before LIRC if the employee had not been terminated for violating the employer's standard.

not write the statute that way. The legislature wrote the statute as it did to allow employers to set standards for misconduct that may work better for their individual businesses than the default standard, and those standards would also serve as the standard for misconduct for purposes of unemployment benefits—whether the employer's standard was more or less strict than the default standard. That is why the legislature wrote "unless otherwise specified." DWD correctly notes, "The statute is clear that if the employer satisfies [the "unless" conditions], the statute's default standard is *not* applicable."

¶ 29. Other language of WIS. STAT. § 108.04(5)(e) should also be considered. As DWD points out:

> A disqualification under the *tardiness* prong of [§ 108.04](5)(e) requires only that the employer "communicate" the employer's tardiness policy to the employee. Neither the default standard nor the tardiness provision requires that the employer communicate the absence/tardiness policy *in writing,* much less prove an "acknowledged receipt [of a policy] with the employee's signature." (Emphasis added.)

I agree with DWD that it is unlikely

> the Legislature would have created the provision encouraging employer policies on absenteeism—with disqualification conditioned on written notice to the employee and proof of receipt by signed acknowledgement —solely, as LIRC contends, to support disqualification by standards that are *less strict* than the statutory default standard. The default standard was legislated in the same sentence comprising [§ 108.04](5)(e) but requires no notice of that standard to the employee in order to effect a misconduct disqualification.

The fact the legislature wrote into para. (5)(e) a more stringent requirement in order for a policy "otherwise

201

specified" by an employer to have effect supports the plain reading of para. (5)(e) discussed above.

¶ 30.  At bottom, LIRC does not like the new policy the legislature and governor enacted, so it has decided to effectively rewrite it. And the majority is going along with it. It is neither LIRC's nor this court's role to "soften" what the legislature intended by what it wrote. If the consequences of what it wrote are harsh in the eyes of some, legislators may be held accountable for it at the ballot box; new representatives and senators may be elected to affect a change in the language. But neither LIRC nor we are charged with changing the language ourselves.

¶ 31.  I would affirm the circuit court.